```
                    UNITED STATES DISTRICT COURT

              CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

              HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE




   ROBERT VERTHELYI,                )
                                    )
           Plaintiff,               )
                                    )
              vs.                   )
                                    )  2:24-CV-5028-MWF
   PENNYMAC MORTGAGE INVESTMENT     )
   TRUST, et al.,                   )
                                    )
           Defendants.              )
   _____




                    REPORTER'S TRANSCRIPT OF HEARING

                       Los Angeles, California

                     Thursday, November 21, 2024




                 _____




                      AMY DIAZ, RPR, CRR, FCRR
                      Federal Official Reporter
                     350 West 1st Street, #4455
                        Los Angeles, CA 90012
```

*Please order court transcripts here:  www.amydiazfedreporter.com*


AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

```
 1    APPEARANCES OF COUNSEL:
 2
      For the Plaintiff:
 3
 4              BERMAN TABACCO
                By:  Daniel Barenbaum, Attorney at Law
 5                   Jeffrey Rocha, Attorney at Law
                425 California Street, Suite 2300
 6              San Francisco, California 94104
 7              DILWORTH PAXSON LLP
                By:  Catherine Pratsinakis, Attorney at Law
 8              1500 Market Street, Suite 3500E
                Philadelphia, Pennsylvania 19102
 9
10
11
      For the Defendants:
12
                WILLIAMS & CONNOLLY LLP
13              By:  Steven Farina, Attorney at Law
                     Melissa Collins, Attorney at Law
14              680 Main Avenue SW
                Washington, D.C. 20024
15
                UMHOFER MITCHELL & KING LLP
16              By:  Matthew Umhofer, Attorney at Law
                     Jonas Mann, Attorney at Law
17              767 South Alameda Street, Suite 270
                Los Angeles, California 90021
18
19
20
21
22
23
24
25
```

```
15:01:00   1              THE CLERK:  Calling item number two, case number
15:01:05   2   CV-24-5028-MWF, Roberto Verthelyi vs. PennyMac Mortgage
15:01:15   3   Investment Trust, et al.
15:01:16   4              Counsel, please state your appearance for the
15:01:18   5   record.
15:01:31   6              MR. BARENBAUM:  Good morning, Your Honor.  Daniel
15:01:34   7   Barenbaum, Berman Tabacco, on behalf of plaintiff.  Good
15:01:39   8   afternoon, sorry.
15:01:39   9              MR. ROCHA:  Good afternoon, Your Honor. Jeff Rocha,
15:01:41  10   also Berman Tabacco, on behalf of plaintiff.
15:01:44  11              MS. PRATSINAKIS:  Catherine Pratsinakis with
15:01:45  12   Dilworth Paxson, also on behalf of plaintiff.
15:01:46  13              THE COURT:  Good afternoon, counsel.
15:01:49  14              MR. FARINA:  Good afternoon, Your Honor.  Steven
15:01:51  15   Farina from Williams & Connolly on behalf of PennyMac.
15:01:55  16              MS. COLLINS:  Melissa Collins, also of Williams &
15:01:56  17   Connolly, on behalf of PennyMac.
15:01:56  18              MR. UMHOFER:  Good morning, Your Honor.  Matthew
15:01:57  19   Umhofer and Jonas Mann on behalf of PNMAC Capital Management.
15:02:01  20              THE COURT:  Good afternoon, counsel.  You may be
15:02:04  21   seated.
15:02:05  22              There is a jury deliberating.  If we get a note, I
15:02:11  23   will take that up.  If there is a verdict, I will receive
15:02:14  24   those verdicts.  I try not to waste lawyers' time, but even
15:02:20  25   less would I keep a jury waiting.  They said that they would
```

| | |
|---|---|
| 1  15:02:24 | just deliberate today until 3:30; I don't know whether |
| 2  15:02:27 | because they just wanted to get some more work done, or |
| 3  15:02:30 | whether they were hoping perhaps to reach a verdict. |
| 4  15:02:33 | So I just want to give you a heads up that that |
| 5  15:02:36 | might be interrupting us.  It would be a lengthy |
| 6  15:02:40 | interruption, so if you chose to proceed by Zoom at a later |
| 7  15:02:46 | date, that would be fine.  And I just want to say, with |
| 8  15:02:51 | out-of-town counsel, if you wish to appear by Zoom for a |
| 9  15:02:54 | hearing, then I'm certainly open to that. |
| 10 15:02:58 | So let's get started.  In light of the tentative, |
| 11 15:03:05 | let me hear from the movants. |
| 12 15:03:09 | MR. FARINA:  Thank you, Your Honor.  Good afternoon. |
| 13 15:03:18 | We have read the tentative.  Thank you for that.  I'll go |
| 14 15:03:21 | straight to the issues that you've raised on the choice of |
| 15 15:03:25 | law issue. |
| 16 15:03:26 | We certainly agree that the choice of law provision |
| 17 15:03:30 | applies to this dispute.  And the issue that Your Honor has |
| 18 15:03:34 | raised is whether or not California's interests override |
| 19 15:03:37 | Maryland's interests. |
| 20 15:03:38 | Now, PennyMac is, of course, a Maryland REIT, it's |
| 21 15:03:43 | organized under the laws of Maryland, and the choice of law |
| 22 15:03:47 | provision that is included is directly on point, that it |
| 23 15:03:49 | speaks to any dispute arising out of these foundational |
| 24 15:03:52 | corporate documents shall be governed by Maryland law. |
| 25 15:03:56 | And this dispute, particularly the way Your Honor is |

```
15:04:00  1  reviewing the dispute and analyzing it, depends on the
15:04:03  2  Articles Supplementary, which are part of the Declaration of
15:04:06  3  Trust.
15:04:07  4          So the issue that Your Honor is addressing in the
15:04:11  5  tentative goes directly to these foundational corporate
15:04:14  6  documents.
15:04:15  7          And Your Honor has raised, and the plaintiffs have
15:04:18  8  raised, the Walter decision.  The Walter decision was a
15:04:21  9  consumer case.  It involved an Internet provider.  It did not
15:04:26 10  involve shareholders in a REIT or in a corporation.  There is
15:04:30 11  an entirely separate body of law that addresses the rights of
15:04:33 12  shareholders vis-a-vis the corporation in which they own
15:04:38 13  shares.
15:04:39 14          And those foundational corporate documents, the
15:04:42 15  Articles Supplementary, the Declaration of Trust, explain how
15:04:45 16  those disputes are to be adjudicated.  And they are to be
15:04:49 17  adjudicated under Maryland law.  This is not a consumer
15:04:52 18  action; because it is not a consumer action, the concern that
15:04:55 19  is raised in the Walter decision about remedies is not
15:04:59 20  present here.
15:05:00 21          There is an entire body of law, Maryland law, that
15:05:04 22  tells corporations and REITs how they are supposed to deal
15:05:10 23  fairly with their shareholders, and to apply fairly their
15:05:13 24  foundational corporate documents, such as the Declaration of
15:05:17 25  Trust and the Articles Supplementary.
```

| | |
|---|---|
| 1  15:05:20 | The Maryland Court of Appeals, the highest court in |
| 2  15:05:24 | Maryland, has said that these foundational corporate |
| 3  15:05:27 | documents are effectively contracts between the shareholders |
| 4  15:05:30 | and the corporation.  There is nothing that would preclude |
| 5  15:05:32 | the plaintiff from suing under Maryland law to enforce their |
| 6  15:05:38 | reading, and Your Honor's reading, of the Articles |
| 7  15:05:42 | Supplementary. |
| 8  15:05:42 | And there is nothing that would keep them from |
| 9  15:05:45 | getting an adequate remedy, including having the corporation |
| 10 15:05:49 | change, and forcing the corporation, if that is what the |
| 11 15:05:54 | Court rules, to follow the Articles Supplementary, to follow |
| 12 15:05:57 | these foundational corporate documents in their dealings with |
| 13 15:06:00 | their shareholders. |
| 14 15:06:02 | There are shareholder disputes that are adjudicated |
| 15 15:06:05 | between shareholders and the company on a daily basis all |
| 16 15:06:08 | over the country, including in Maryland.  This is not the |
| 17 15:06:11 | same as *Walter*, which involved an Internet service provider |
| 18 15:06:15 | and consumers.  These are shareholders.  They can be -- they |
| 19 15:06:20 | can be, by analogy, called consumers, and I understand that |
| 20 15:06:22 | the definitions in the UCL are quite broad, but |
| 21 15:06:27 | fundamentally, they are shareholders, and their dispute is |
| 22 15:06:30 | governed by these foundational documents, and they have an |
| 23 15:06:32 | adequate remedy under Maryland law that may not be available |
| 24 15:06:37 | to a consumer who is dealing with an Internet company.  But |
| 25 15:06:40 | shareholders in Maryland, and every other jurisdiction, have |

| | | |
|---|---|---|
| 1 | 15:06:43 | an adequate remedy to force their corporation to adhere to |
| 2 | 15:06:48 | their foundational corporate charter documents. |
| 3 | 15:06:51 | So there is no showing on the part of the plaintiff |
| 4 | 15:06:54 | that they could not get relief, if they are entitled to |
| 5 | 15:06:57 | relief, applying Maryland law. |
| 6 | 15:07:00 | So we don't -- |
| 7 | 15:07:02 | THE COURT: I'm sorry, counsel. I don't mean to |
| 8 | 15:07:04 | interrupt you, but I wanted to ask. |
| 9 | 15:07:06 | MR. FARINA: No, please. |
| 10 | 15:07:07 | THE COURT: Let's say I agreed with you, then what |
| 11 | 15:07:11 | do you see happening here, is that you are going to make a |
| 12 | 15:07:13 | motion to transfer it? You would say that there -- it would |
| 13 | 15:07:18 | remain here, but I would apply the Maryland law, presumably |
| 14 | 15:07:23 | then, you know, by granting leave to amend, and then that is |
| 15 | 15:07:27 | the way it comes back. |
| 16 | 15:07:28 | What would you -- what, in your view, is the proper |
| 17 | 15:07:31 | disposition if I were to agree with the argument that you are |
| 18 | 15:07:35 | making? |
| 19 | 15:07:36 | MR. FARINA: If the UCL doesn't apply, there is no |
| 20 | 15:07:38 | reason, there is no basis to keep this case here in |
| 21 | 15:07:42 | California. The plaintiff is not a California resident. The |
| 22 | 15:07:44 | case should be adjudicated in Maryland. I guess it's up to |
| 23 | 15:07:47 | the plaintiff, but we would probably, I would imagine, move |
| 24 | 15:07:50 | for transfer, because it's a Maryland REIT, and you are |
| 25 | 15:07:53 | adjudicating Maryland law, and the plaintiff is from New |

```
15:07:56   1   Jersey.
15:07:56   2              The case -- the hook to get the case here is the
15:08:01   3   UCL.  But the cases that we cite are, I think, quite clear
15:08:05   4   that if the choice of law provision mandates the application
15:08:09   5   of Maryland law, and the Court would apply Maryland law, the
15:08:12   6   UCL claim disappears.
15:08:14   7              So there would be no more hook to keep it in this
15:08:17   8   Court.
15:08:17   9              THE COURT:  That, I understand.  As a technical
15:08:19  10   matter, I don't know that that was really -- that that is the
15:08:22  11   hook.  I mean, there is either a basis for it to be in this
15:08:25  12   court or not, which could be tested by a motion to transfer.
15:08:29  13              But I recognize that, at least in your view, that
15:08:34  14   would affect that decision, which is why I'm asking the
15:08:38  15   question.
15:08:38  16              What, other than that point, which is the point that
15:08:44  17   I have certainly been struggling with, I agree with you that
15:08:47  18   it's a difficult one, what -- or perhaps I should say I feel
15:08:52  19   it's a difficult one, you might very well feel that it's not
15:08:54  20   a difficult one.  So I shouldn't say that we are agreeing.
15:08:57  21              MR. FARINA:  More difficult now than it was a half
15:08:59  22   an hour ago.
15:09:00  23              THE COURT:  What else do you want to address in the
15:09:05  24   tentative?
15:09:05  25              MR. FARINA:  Sure.  As I understand the tentative,
```

1  15:09:07   Your Honor is focusing on the Articles Supplementary, which
2  15:09:10   again, frankly, is all the more reason why this should be
3  15:09:13   adjudicated under the appropriate law.
4  15:09:15          But Your Honor is pointing out, what Your Honor is
5  15:09:20   characterizing as a contradiction between 4(a) and I think
6  15:09:23   4(g), and we are not suggesting that anything other than the
7  15:09:27   agreement, all the provisions of the Articles Supplementary
8  15:09:31   need to be read together.
9  15:09:32          So you read 4(a) and 4(g) together, and 4(a) talks
10 15:09:36   about the issuance of dividends, and 4(a) directs the reader
11 15:09:41   to 4(g) under defined terms to establish how the dividend
12 15:09:46   rates are to be calculated.
13 15:09:49          So by no means are we suggesting that the two are
14 15:09:52   separate and apart from one another, our argument is that in
15 15:09:55   order to apply 4(a), you need to look at 4(g), because 4(g)
16 15:10:00   tells you the waterfall that gets you to a dividend rate.
17 15:10:04          And I don't think that there is a dispute that if
18 15:10:07   you apply the waterfall, when you get to the end, when you
19 15:10:11   disregard the provisions that must be disregarded because of
20 15:10:14   the LIBOR Act; namely, any rate that depends on LIBOR, you
21 15:10:20   disregard that under the LIBOR Act; and then, B, any polling
22 15:10:24   provision, you disregard that.
23 15:10:26          The waterfall is LIBOR, polling provision, and then
24 15:10:31   revert back to the rate in the prior dividend period.  That
25 15:10:35   is a fixed rate.  It will always be a fixed rate.  It was a

fixed rate in 2017 when the Articles Supplementary were approved. But that is what the agreement says. Those are the terms pursuant to which any shareholder purchased these preferred shares. That in the event of a disappearance of LIBOR, whether or not people thought that was going to happen, wasn't going to happen, temporary, permanent, here are the steps that the company would follow in determining the dividend rate for the preferred shareholders.

And that is what we did. We followed exactly what is laid out in the agreement. And you can't interpret 4(a) and the use of the term floating, floating is then defined in 4(g). And in 4(g), it says, here is how you do it, one, two, three, four. We are on to the last one, and the last one clearly on its terms mandates a reversion to the prior rate, which is always going to be a fixed rate, because it's the prior rate.

So that is what we are arguing. We are just simply arguing that you apply what the agreement, the agreement, the Articles Supplementary, said you would do at the time the shares were issued. And that is all that we did.

So the question is: Does the LIBOR Act change any of that? The LIBOR Act was meant to address situations where there wasn't a fallback provision that could operate without LIBOR.

But congress was very clear what that meant. There

15:12:04    are two specific circumstances that are set out in the LIBOR
15:12:09    Act for when a fallback provision doesn't work.
15:12:13             1.  It depends on LIBOR.  That isn't the case here.
15:12:17    And;
15:12:17             2.  It involves a polling operation.  That isn't the
15:12:23    case here.  Both of those are being disregarded in the
15:12:26    Articles Supplementary.
15:12:27             There is nothing in the LIBOR Act that requires any
15:12:29    other requirement.  There is nothing that says it has to be a
15:12:32    fixed rate.  They could have said that.  They could have
15:12:33    said, can't depend on LIBOR, can't depend on polling, can't
15:12:36    be a fixed rate.  That is not in the statute.
15:12:39             The statute specifically identifies what fallback
15:12:43    provisions will be replaced, and this isn't one of those
15:12:46    circumstances.
15:12:47             And the other thing that the statute says, and it
15:12:49    says it three times, is that if there is a fallback provision
15:12:54    that works -- and by that, again, they mean doesn't include
15:12:58    one of these disqualifiers, leaving you with nothing -- then
15:13:03    you apply whatever it is the parties agreed to.  They say it
15:13:06    three times.  They say it in the purpose, they say it in the
15:13:10    rules of construction, that section in the LIBOR Act, and
15:13:13    then they say it, that there is no -- there should be no
15:13:15    negative inference or presumption against any rate that is
15:13:19    applied in an existing contract pursuant to existing fallback

```
 1  15:13:24   provisions, because it isn't the one that the board decides
 2  15:13:27   should be applied.
 3  15:13:30            So there is three times where Congress said, if it
 4  15:13:33   ain't broke, we are not trying to fix it.  And they said
 5  15:13:36   exactly what it means for the contract to be broken.
 6  15:13:39            Now, Your Honor I think is saying the contract is
 7  15:13:42   broken because 4(a) is intentioned with 4(g).  We
 8  15:13:46   respectfully submit it's not.  4(a) depends on applying 4(g),
 9  15:13:51   and 4(g) itself is clear; and if it is clear, the LIBOR Act
10  15:13:57   has nothing to do with it, because it doesn't fit within any
11  15:14:01   of those circumstances where the LIBOR Act requires an
12  15:14:05   intervention, and an overriding of what the parties agreed
13  15:14:08   to, and the imposition of a different replacement benchmark.
14  15:14:13            So what is contemplated by the LIBOR Act in terms of
15  15:14:17   a contract that doesn't work is not what is at issue here;
16  15:14:20   and frankly, it's not what Your Honor has found.  Your Honor
17  15:14:24   hasn't found that either of those provisions are applicable
18  15:14:27   from the LIBOR Act.
19  15:14:28            Your Honor is questioning whether or not what is in
20  15:14:31   the Articles Supplementary actually works.  And that is a
21  15:14:34   decision that should be made by a Maryland -- under Maryland
22  15:14:37   law, because it is a Maryland instrument, and it is a dispute
23  15:14:41   between the shareholders of a Maryland REIT, and that REIT
24  15:14:47   over the operation of these foundational corporate documents.
25  15:14:50            The LIBOR Act, if the LIBOR Act has nothing to say
```

| | |
|---|---|
| 1  15:14:54 | about that, then it doesn't violate the LIBOR Act. |
| 2  15:14:58 |         THE COURT:  Thank you. |
| 3  15:14:59 |         Let me hear from the plaintiff. |
| 4  15:15:03 |         MS. PRATSINAKIS:  Good afternoon, Your Honor. |
| 5  15:15:23 |         I would like to say that the Court, in terms of the |
| 6  15:15:30 | LIBOR Act, got it exactly right.  We have a contract that |
| 7  15:15:34 | states we are going to be fixed for a certain period of time, |
| 8  15:15:37 | and then we are going to be floating. |
| 9  15:15:39 |         The definition of three-month LIBOR is in Section |
| 10 15:15:42 | (g), and that is separate and apart, and all falls from the |
| 11 15:15:46 | LIBOR benchmark.  And so the LIBOR Act sought to take |
| 12 15:15:55 | provisions of legacy contracts that just simply did not have |
| 13 15:15:59 | a way to provide for an adequate replacement benchmark. |
| 14 15:16:05 | Here, there is no other benchmark referenced in the Articles. |
| 15 15:16:08 |         All that is referenced is the definition of |
| 16 15:16:11 | three-month LIBOR, and it's just a waterfall that all stems |
| 17 15:16:15 | from LIBOR, that definition. |
| 18 15:16:17 |         And so I think Your Honor got it exactly right, that |
| 19 15:16:21 | the last provision in (g) cannot negate the material, the |
| 20 15:16:27 | very material key terms of provision (a), which provides you |
| 21 15:16:30 | will have a fixed period for this amount.  It has a set end |
| 22 15:16:35 | date.  There is nothing in (g) that states that I could then |
| 23 15:16:39 | extend the fixed rate in perpetuity. |
| 24 15:16:41 |         That language, by the way, I mean, I read it many, |
| 25 15:16:46 | many times, and I apologize to my colleagues on my right, I |

| | |
|---|---|
| 1  15:16:52 | don't think it's clear.  I think it's quite unclear. |
| 2  15:16:54 | I don't know if there is a time or spacial existence |
| 3  15:16:58 | where there is no such dividend period.  I think it's poorly |
| 4  15:17:01 | drafted.  I don't agree that it's just so clear on its face. |
| 5  15:17:05 | And it's not a benchmark.  You can't just have an old, |
| 6  15:17:09 | outdated, fixed rate from seven years ago, that is completely |
| 7  15:17:15 | divorced from market factors today, and claim that that is a |
| 8  15:17:19 | benchmark.  That is just not a benchmark.  It's basic |
| 9  15:17:24 | finance.  It's not the intention of the LIBOR Act. |
| 10 15:17:26 | I think Your Honor got that exactly right, where we |
| 11 15:17:29 | saw that the legislative testimonies said over and over |
| 12 15:17:33 | again, these legacy contracts are problematic, you know, they |
| 13 15:17:38 | don't have an adequate benchmark, practicable one, and we |
| 14 15:17:43 | need to do something about it. |
| 15 15:17:45 | We provided -- you know, congress provided this |
| 16 15:17:48 | company with a very easy off ramp to meet the parties' |
| 17 15:17:52 | expectations, and to not put one in a worse position than the |
| 18 15:17:55 | other, and it just failed to do so. |
| 19 15:17:58 | It's looking for a loophole to save a couple of |
| 20 15:18:00 | bucks.  You know, 300 basis points, it's pretty substantial. |
| 21 15:18:06 | These are retail investors, they are not the big |
| 22 15:18:09 | institutional investors.  A lot of their competitors, they |
| 23 15:18:13 | had to come up against negotiations with the institutions. |
| 24 15:18:15 | They had leverage. |
| 25 15:18:15 | Here, we didn't have leverage.  We are just a bunch |

|   |   |   |
|---|---|---|
| 1 | 15:18:18 | of retail investors, and PennyMac thought, oh, we could save |
| 2 | 15:18:22 | some money, let's go for it.  That is really what this case, |
| 3 | 15:18:24 | you know, comes down to. |
| 4 | 15:18:25 | There is the expectations of the preferreds, and |
| 5 | 15:18:31 | there is a violation of law.  It is not this quintessential |
| 6 | 15:18:34 | Maryland question of whether they violated Maryland law. |
| 7 | 15:18:37 | That seems quite a stretch.  There is nothing particularly |
| 8 | 15:18:41 | wrong with California having an interest in making sure the |
| 9 | 15:18:46 | companies that are, in its four corners of the state, are |
| 10 | 15:18:51 | acting lawfully.  I don't know that that is really that |
| 11 | 15:18:54 | immaterial of an interest. |
| 12 | 15:18:55 | And I don't know that Maryland is really in a |
| 13 | 15:18:59 | particularly better situated place to decide federal law |
| 14 | 15:19:04 | issues than a Federal Court here. |
| 15 | 15:19:07 | They didn't ask for a different venue.  They could |
| 16 | 15:19:11 | have asked for a different venue when they filed their |
| 17 | 15:19:14 | motion, they didn't do that.  So I think it's too little too |
| 18 | 15:19:18 | late. |
| 19 | 15:19:18 | Personally, I don't know why, you know, when I sort |
| 20 | 15:19:24 | of sat back and thought about, you know, the *Walter* case, and |
| 21 | 15:19:29 | why -- it just kind of smacked me in the face that they |
| 22 | 15:19:33 | wouldn't even talk about it.  They didn't even mention |
| 23 | 15:19:36 | *Walter.*  They didn't mention *It's Just Lunch*.  They didn't |
| 24 | 15:19:39 | mention the *Jialu Wu* case.  These cases are quintessentially |
| 25 | 15:19:43 | about protecting fundamental policy here in California. |

15:19:47         And we, whether it's a consumer case, or a
15:19:52  shareholder case, the Maryland CPA is the corollary, and the
15:19:56  Maryland CPA does not include, or does not provide
15:20:03  Mr. Verthelyi with the ability to get a public injunction on
15:20:05  behalf of the class.
15:20:06         You know, it's -- it would have been nice if they
15:20:09  actually addressed it in their papers.  I almost consider it
15:20:12  waived, but I leave that to Your Honor's discretion.
15:20:15         If there are -- sorry.  One other point.  Congress
15:20:21  said three times that it didn't want to disrupt a contract
15:20:27  that had an adequate, practicable and clear benchmark
15:20:33  replacement.
15:20:34         This contract has neither a clear language about a
15:20:39  replacement, has neither, you know, an adequate one, and it's
15:20:45  not a benchmark.  It's an old interest rate from seven years
15:20:49  ago.
15:20:50         And it would be completely unfair to change the
15:20:53  entire nature of this note.  It's a floating rate note, a
15:20:59  floating rate note that doesn't float, that is now just
15:21:01  tethered to a really old, outdated rate that, you know, what,
15:21:07  200 years from now we are going to be relying on the 2017
15:21:10  note rate?  I mean, that doesn't make any sense.  It's
15:21:12  unfair.
15:21:13         And I guess -- I don't think -- it also struck me as
15:21:19  sort of unusual that a company would try to use a federal law

15:21:23   that was designed to prevent the very thing they are trying
15:21:27   to do, and say, oh, well, mea culpa, you know, we were
15:21:32   required to strike out these sentences, but we weren't
15:21:34   required to strike out this last one; so therefore, we could
15:21:38   do the very thing the LIBOR Act was designed to prevent.
15:21:43   It's just quite extraordinary to me, their position.
15:21:49              Thank you, Your Honor.
15:21:49              THE COURT:  Thank you.
15:21:50              Let me hear a response.
15:21:54              MR. FARINA:  So I don't think it's extraordinary for
15:21:57   us to apply the Articles Supplementary exactly how they are
15:22:02   written.  The Articles Supplementary were created in 2017 for
15:22:07   the purpose of issuing these shares, and it laid out how
15:22:12   three-month LIBOR would be calculated.  It laid out how the
15:22:16   waterfall would work if LIBOR were not available.  Those were
15:22:21   the rules.  Those were the rules that would govern the
15:22:24   relationship between these preferred shareholders and the
15:22:27   company.  And all we've done is followed what we said we
15:22:31   would do.  That is what we have done.
15:22:34              And we do have fiduciary obligations to the common
15:22:37   shareholders.  You can't favor one class of shareholders over
15:22:41   another.  All we are trying to do is we are applying the
15:22:44   Articles Supplementary as written.  And there is nothing in
15:22:46   the LIBOR Act that precludes that.  The LIBOR Act has nothing
15:22:51   to do with that, absent those circumstances that are

1 15:22:52   specified in the LIBOR Act.
2 15:22:54             There is is a lot of discussion about what
3 15:22:57   everyone's intent was.  All we are asking the Court to do is
4 15:22:59   to apply what is in the Articles Supplementary, and what is
5 15:23:02   in the LIBOR Act.
6 15:23:03             And the LIBOR Act, when it speaks of a benchmark
7 15:23:06   replacement, specifically says that it can be an interest
8 15:23:10   rate or a dividend rate, or a benchmark.  It has all three.
9 15:23:15   And that is what we have done.
10 15:23:17            And if the shareholders believe that this violates a
11 15:23:24   fundamental corporate charter, the Articles Supplementary,
12 15:23:28   they can bring suit under that.  This is not a consumer
13 15:23:31   action.
14 15:23:31            And why did we not ask for it to be transferred?
15 15:23:34   Because the appropriate remedy, if Maryland law applies, is
16 15:23:38   that the UCL claim should be dismissed.  There is no more
17 15:23:41   claim.  That would require dismissal.
18 15:23:43            THE COURT:  True, but there could -- it could be,
19 15:23:45   and would be, in fact, dismissed with leave to amend.  And
20 15:23:50   obviously, if everyone wanted it to be in Maryland, then that
21 15:23:55   is fine; but here -- counsel I have, in fact, received a
22 15:24:01   verdict from the jury.  So I will take this under submission.
23 15:24:08            I guess because of kind of the intricacies of the --
24 15:24:13   of what I perceive to be that issue, I probably, in the
25 15:24:17   extent that I've had time to focus on this with this lengthy

                    AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

| | |
|---|---|
| 1 15:24:21 | civil trial now coming to an end, I have -- was more on the |
| 2 15:24:26 | issue, which frankly I'm sure to you and your clients matters |
| 3 15:24:29 | less than the proper interpretation of the LIBOR Act. |
| 4 15:24:32 | So all I'm going to say now is that both of those |
| 5 15:24:35 | issues are taken under submission.  And I will carefully |
| 6 15:24:40 | consider your arguments when I think through how -- what my |
| 7 15:24:46 | final order should be. |
| 8 15:24:47 | Thank you, counsel. |
| 9 15:24:48 | MR. FARINA:  Can I ask, in light of this issue of |
| 10 15:24:51 | whether or not there is an adequate remedy under Maryland |
| 11 15:24:55 | law, we would be -- we would welcome the opportunity to |
| 12 15:24:58 | provide a very short supplemental brief on that. |
| 13 15:25:01 | THE COURT:  I'll keep that in mind, but I doubt that |
| 14 15:25:03 | will be necessary. |
| 15 15:25:04 | MR. FARINA:  Thank you, Your Honor. |
| 16 15:25:05 | THE COURT:  Thank you, counsel. |
| 17 | ***** ***** ***** |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

1   I certify that the foregoing is a correct transcript from the
2   record of proceedings in the above-titled matter.
3
4
5
6   ----------------------------
7
8   Amy C. Diaz, RPR, CRR              November 26, 2024
9   S/  Amy Diaz

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER