UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 24-05028-MWF (JCx)**                    **Date:  February 26, 2025**
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

Present:   <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

Deputy Clerk:                                Court Reporter:
Rita Sanchez                                 Not Reported

Attorneys Present for Plaintiff:             Attorneys Present for Defendants:
None Present                                 None Present

**Proceedings (In Chambers):**   ORDER RE: DEFENDANTS' MOTIONS TO
                                 DISMISS [34] [35]

Before the Court are two motions to dismiss:

The first Motion to Dismiss ("PennyMac MTD") was filed on August 20, 2024, by Defendant PennyMac Mortgage Investment Trust ("PennyMac").  (Docket No. 34). Plaintiff Roberto Verthelyi filed an Opposition on October 11, 2024 ("PennyMac Opp.").  (Docket No. 37).  PennyMac filed a Reply on November 4, 2024 ("PennyMac Reply").  (Docket No. 41).

The second Motion to Dismiss ("PNMAC MTD") (collectively, "Motions") was filed on August 20, 2024, by Defendant PNMAC Capital Management, LLC ("PNMAC").  (Docket No. 35).  Plaintiff filed an Opposition on October 11, 2024 ("PNMAC Opp.").  (Docket No. 38).  PNMAC filed a Reply on November 4, 2024 ("PNMAC Reply").  (Docket No. 42).

The Court has read and considered the Motions and held a hearing on **November 21**, **2024**.

The Motions are **DENIED.**  Plaintiff has plausibly alleged that Defendants violated the LIBOR Act when they failed to adopt an appropriate replacement benchmark under the Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)          Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

## I.    **BACKGROUND**

Plaintiff brings this putative class action on behalf of himself individually and all others similarly situated against PennyMac and PNMAC (collectively, "Defendants"). (*See generally* Compliant (Docket No. 1)).  The Court summarizes the allegations in the Complaint in the light most favorable to Plaintiff as follows:

The putative class consists of all persons and entities who own or owned shares ("Preferred Shareholders") of Defendants' fixed-to-floating rate Series A Preferred Shares and/or Series B Preferred Shares (collectively, "Preferred Shares") at any time between August 25, 2023, and the conclusion of this action.  (*Id.* ¶ 1).  PennyMac is a mortgage real estate investment trust that invests primarily in residential mortgage loans and mortgage-related assets.  (*Id.* ¶ 2).  PennyMac is externally managed by PNMAC.  (*Id.*).

Defendants set out the terms for issuing dividends on the Preferred Shares in the governing documents authorizing those shares, the Articles Supplementary (the "Articles").  (*Id.* ¶ 3).  The Articles called for the Preferred Shares to transition from a fixed-rate to a floating-rate dividend based on the London Inter-Bank Offered Rate ("LIBOR") in 2024.  (*Id.*).

However, on March 5, 2021, the U.K. Financial Conduct Authority announced that LIBOR would permanently cease publication on June 30, 2023.  (*Id.* ¶ 46).  Recognizing the need for a uniform, nationwide solution for replacing references to LIBOR in legacy contracts, Congress enacted the LIBOR Act, 12 U.S.C. §§ 5801 et seq., on March 15, 2022.  (*Id.* ¶ 47).

Section 5803 of the LIBOR Act states, in relevant part, that once LIBOR ceases to exist, the "Board-selected benchmark replacement shall be the benchmark replacement for any LIBOR contract that . . . (1) contains no fallback provisions; or (2) contains fallback provisions that identify neither—(A) a specific benchmark replacement; nor (B) a determining person."  12 U.S. Code § 5803(a).  The LIBOR Act, however, does not alter or impair "any LIBOR contract that contains fallback

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 24-05028-MWF (JCx)**          **Date:  February 26, 2025**
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

provisions that identify a benchmark replacement that is not based in any way on any
LIBOR value." *Id.* § 5803(f)(2).

The Articles provide that Preferred Shareholders are to be paid dividends at a
rate based off of the contractually-defined term "Three-Month LIBOR." (PennyMac
Opp., Ex. A (Docket No. 36-2) ("Series A Articles") at ¶ 4(a)); (PennyMac Opp., Ex.
B (Docket No. 36-3) ("Series B Articles") (collectively, the "Articles") at ¶ 4(a)).
"Three-Month LIBOR," in turn, provides contingencies for how the dividend should be
calculated in a variety of circumstances. (Articles at ¶ 4(g)). Per the Articles' terms,
Three-Month LIBOR is set first at a LIBOR rate appearing on a Reuters page (the
"Screen Rate"). *Id.* If the Screen Rate is unavailable, a series of "fallbacks" kick in.
*Id.* First, Three-Month LIBOR will equal the average interest rate quoted to PennyMac
from individual banks on the London or New York City markets (the "Polling Rate").
*Id.* If the Polling Rate is unavailable, then "the Three-Month LIBOR for the applicable
Dividend Period will be the same as for the immediately preceding Dividend Period."
*Id.* Finally, "if there was no such Dividend Period"—that is, there was no immediately
preceding Dividend Period utilizing a "Three-Month LIBOR Rate"—then "the
dividend shall be calculated at the dividend rate in effect for the immediately preceding
Dividend Period." (*Id.*).

On August 25, 2023, the Preferred Shareholders learned that Defendants would
issue dividends for its Preferred Shares at the fixed "dividend rate in effect for the
immediately preceding dividend period." (Complaint ¶ 53). As a result, owners of the
Series A Preferred Shares are being paid a flat 8.125% dividend and owners of the
Series B Preferred Shares are receiving a flat 8.00% dividend. (*Id.* at ¶ 19).

Plaintiff alleges that Defendants, in choosing to pay a fixed rate in perpetuity,
violated the LIBOR Act. (*Id.* at ¶ 57). Moreover, following the announcement, the
prices of both the Series A and Series B Preferred Shares "fell precipitously, shedding
$40 million in collective market capitalization." (*Id.* at ¶ 58). In addition to the loss in
market value, Plaintiff alleges Preferred Shareholders have and will continue to earn
less than the interest promised on their investment. (*Id.* at ¶ 60).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 24-05028-MWF (JCx)**                    **Date:  February 26, 2025**
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

Based on the foregoing allegations, the Complaint alleges one claim for relief:
Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §
17200 et seq.  (*Id.* ¶¶ 69–87).  Defendants move to dismiss this action in its entirety
under Federal Rule of Civil Procedure 12(b)(6).  (*See generally* Motions).

## II.    REQUESTS FOR JUDICIAL NOTICE

Defendants filed two Requests for Judicial Notice on August 20, 2024, and
November 4, 2024, respectively.  (Docket Nos. 36, 43 ("Defendants' RJNs")).
Plaintiff filed one Request for Judicial Notice on October 11, 2024.  (Docket No. 39
("Plaintiff's RJN")).  Neither party filed Oppositions to the other's RJN(s).

The Court concludes that all of the documents referenced in Defendants' RJNs
and Plaintiff's RJN are appropriate for judicial notice.

Under Rule 12(d) of the Federal Rules of Civil Procedure, if the Court considers
matters outside the pleadings in ruling on a motion to dismiss that motion must be
converted into one for summary judgment.  Fed. R. Civ. P. 12(d).  As a general rule, "a
district court may not consider any material beyond the pleadings in ruling on a Rule
12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  An
exception to this general rule exists for (1) materials that are attached to or necessarily
relied upon in the complaint, and (2) matters of public record.  *Id.* at 688–89; *see also
Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in assessing
securities fraud claims, "courts must consider the complaint in its entirety, as well as
other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to
dismiss, in particular, documents incorporated into the complaint by reference, and
matters of which a court may take judicial notice.").

Plaintiff seeks judicial notice of the following documents:

- Ex. 1: Transcript of Congressional Hearing titled, *The End of LIBOR:
  Transitioning to an Alternative Interest Rate Calculation for Mortgages,
  Student Loans, Business Borrowing, and Other Financial Products*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)              Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

before the Subcommittee on Investor Protection, Entrepreneurship, and
Capital Markets of the Committee on Financial Services, U.S. House of
Representatives, 117th Congress, First Session (April 15, 2021);

- Ex. 2: Transcript of Congressional Hearing titled, *The LIBOR Transition: Protecting Consumers and Investors*, before the Committee on Banking, Housing, and Urban Affairs, U.S. Senate, 117th Congress, First Session on Examining How the Financial System Can Move on From the LIBOR System (Nov. 2, 2021);

- Ex. 3: Congressional Record (House), *Adjustable Interest Rate (LIBOR) Act of 2021*, 167 Cong. Rec. H7479-01 (Dec. 8, 2021);

- Ex. 4: Excerpted pages from PennyMac Mortgage Investment Trust's Annual Report on Form 10-K for the fiscal year ended December 31, 2023 ("2023 Form 10-K"), filed with the U.S. Securities and Exchange Commission ("SEC") on February 22, 2024;

- Ex. 5: Official list of PennyMac's filings from Maryland Department of Assessments and Taxation Maryland; and

- Ex. 6: Impac Mortgage Holdings, Inc.'s Articles Supplementary Designating the Company's 9.375% Series B Preferred Stock.

Because the six documents are public records not reasonably subject to dispute under Federal Rule of Evidence 201(b), the Court grants Plaintiff's RJN.  *See Anderson v. Holder*, 673 F.3d 1089, 1103 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice."); *Maxon v. Fuller Theological Seminary*, 549 F. Supp. 3d 1116, 1122 (C.D. Cal. 2020) ("Courts may take judicial notice of public records and government documents available from reliable sources on the Internet such as websites run by governmental agencies."); *In re Am. Apparel, Inc. S'holder Derivative Litig.*, CV 10-06576-MMM (RCx), 2012 WL 9506072, at *18 (C.D. Cal. July 31, 2012) (citing *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

1064 n.7 (9th Cir. 2008) ) ) ("Courts can consider securities offerings and corporate disclosure documents that are publicly available.").

Defendants request judicial notice of the following documents:

- Ex. A: the Articles Supplementary for each of PennyMac Mortgage Investment Trust's Series A;

- Ex. B: the Articles Supplementary for each of PennyMac Mortgage Investment Trust's Series B Preferred Shares;

- Ex. C: PennyMac Mortgage Investment Trust's operative Declaration of Trust; and

- Ex. D: Adjustable Interest Rate (LIBOR) Act of 2021, H.R. Rep. No. 117-206, pt.1 (2021).

The Court similarly grants both of Defendants' RJNs.  Exhibits A through C are incorporated by reference, as the Complaint discusses the terms of the Preferred Shares contained in each Articles Supplementary.  (*See e.g.*, Complaint ¶¶ 14, 30–38, 45).  And the Articles Supplementary form part of PennyMac's Declaration of Trust under Maryland law, as discussed further below.  Lastly, the Court takes judicial notice of Exhibit D because it is a matter of public record not reasonably subject to dispute under Federal Rule of Evidence 201(b).

## III.  **LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)              Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

## IV.    DISCUSSION

### A.    PennyMac MTD

PennyMac argues that the case should be dismissed for four reasons: (1) Plaintiff cannot bring a claim under the UCL because Maryland law governs; (2) PennyMac's actions complied with the LIBOR Act and were not "unlawful" under the UCL; (3) the UCL safe harbor provision applies; and (4) PennyMac's actions were not "unfair" under the UCL.  (PennyMac MTD at 8–21).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

### 1.  Choice-of-Law Provision

The parties dispute both the scope and enforceability of the relevant choice-of-law provision.

### a.  Scope of the Provision

"[A] trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that various claims . . . fall within its scope."  *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916, 103 Cal.Rptr.2d 320, 328 (2001).  "California, the forum state, ordinarily examines the scope of a choice-of-law provision in a contract under the law designated in that contract."  *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010).

PennyMac argues that Plaintiff's claim should be dismissed because the parties agreed by contract that Maryland law would be applied to resolve disputes over shareholder rights.  (PennyMac MTD at 14–16).  Specifically, PennyMac's operative charter document, the Declaration of Trust, provides:

> The Declaration of Trust is executed by the undersigned Trustees and delivered in the State of Maryland with reference to the laws thereof, and the rights of all parties and the validity, construction and effect of every provision hereof shall be subject to and construed according to the laws of the State of Maryland without regard to conflicts of laws provisions thereof.

(*Id.*, Ex. C. ("Declaration of Trust") (Docket No. 36-4) § 13.1).

First, PennyMac explains that the Articles "are, by operation of law, part of PennyMac's Declaration of Trust, and therefore are subject to the Declaration of Trust's choice of law provision."  (PennyMac MTD at 14).  PennyMac relies on the statutory definition of "declaration of trust" under Maryland law, which is defined as: "the declaration of trust filed with the Department . . . either as originally accepted for record or as amended, corrected, or supplemented by . . . articles supplementary[.]"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                     Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

Md. Code, Corp. & Ass'ns § 8-101; *see also Impac Mortg. Holdings, Inc. v. Timm*, 255
A.3d 89, 94 (Md. 2021) (explaining "articles supplementary . . . are simply an
amendment of the corporate charter").

     Plaintiff disputes that the choice-of-law provision applies to the Articles
because the statute cited by PennyMac merely stands for the proposition that a
declaration of trust can be amended through the articles supplementary.
(PennyMac Opp. at 24).  And the Articles themselves merely express this
possibility, as well.  (*Id.*) (citing Articles at 3) (The Articles, "upon any
restatement of the Declaration of Trust, may become part of . . . the Declaration
of Trust[.]").  However, Plaintiff argues that, because PennyMac never actually
filed a restatement to amend the Declaration of Trust, the Articles do not amend
it.  (PennyMac Opp. at 24).

     The Court is not persuaded by Plaintiff's arguments that the Declaration
of Trust is simply "another irrelevant document."  (*See id.*).  The statutory
definition, as interpreted by the Maryland Supreme Court, reflects the common-
sense proposition that articles supplementary "are simply an amendment of the
corporate charter."  *Impac Mortg. Holdings*, 255 A.3d at 94.  Although Plaintiff
tries to distinguish *Impac Mortg. Holdings* because certain provisions of the
articles supplementary at issue there were different from those in the Articles
here, the supreme court was not interpreting or referring to the specific language
in the parties' articles supplementary.  *See id.*  Rather, the supreme court was
abstractly "describ[ing] some basic elements of corporate finance and basic
principles of contract interpretation under Maryland law."  *Id.* at 93.
Accordingly, the Court concludes the Articles are part of the Declaration of
Trust by operation of law.

     Second, PennyMac explains the choice-of-law provision applies to
Plaintiff's allegations because, at bottom, the allegations amount to a
disagreement over shareholder rights, and the provision governs disputes about
the "validity, construction and effect" of the Articles and the "rights of all
parties" thereunder.  (PennyMac MTD at 15).  Plaintiff responds that the choice-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                 Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

of-law provision only applies to disputes arising from the Declaration of Trust,
and Plaintiff's claims arise out of the LIBOR Act, which was enacted thirteen
years after the Declaration of Trust was filed.  (PennyMac Opp. at 25).

For reasons similar to those discussed above, the Court is not persuaded
by Plaintiff's attempt to characterize the Declaration of Trust as wholly
irrelevant to his allegations.  Plaintiff's claim boils down to a dispute regarding
the rights of the Preferred Shareholders, as outlined in the Articles, which form
part of the Declaration of Trust.  Therefore, the choice-of-law provision applies.

### b.  Enforceability of the Provision

A "federal court sitting in diversity ordinarily must follow the choice-of-law
rules of the State in which it sits." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W.
Dist. of Tex.*, 571 U.S. 49, 65 (2013).  "This applies to actions brought under the Class
Action Fairness Act [ ("CAFA"), 28 U.S.C. § 1332(d)(2),] as well, since CAFA is
based upon diversity jurisdiction." *In re Facebook Biometric Info. Privacy Litig.*, 185
F.Supp.3d 1155, 1167–68 (N.D. Cal. 2016) (citation omitted); *see also Vrugtman v.
It's Just Lunch Int'l LLC*, EDCV 20-2352-JGB (SPx), 2021 WL 4979443, at *3 (C.D.
Cal. Sept. 24, 2021); *Woodard v. Boeing Emps. Credit Union*, 23-CV-00033, 2023 WL
4847126, at *2 (W.D. Wash. July 28, 2023).

California courts apply a two-pronged test to determine whether a choice-of-law
clause is enforceable.  *Wash. Mut. Bank*, 24 Cal. 4th at 916.  The test considers: "(1)
whether the chosen state has a substantial relationship to the parties or their
transaction, or (2) whether there is any other reasonable basis for the parties' choice of
law." *Id.*  "If neither of these tests is met, that is the end of the inquiry, and the court
need not enforce the parties' choice of law." *Id.*  However, "[i]f either prong is met the
choice of law will be enforced unless 'contrary to a fundamental policy' of the
alternative state . . . and if the [alternative] state 'has a materially greater interest in the
determination of the particular issue.'" *Williams v. Facebook, Inc.*, 384 F. Supp. 3d
1043, 1056 (N.D. Cal. 2018) (quoting *Wash. Mut. Bank*, 24 Cal. 4th at 917).
California law "reflects a strong public policy favoring enforcement of freely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                Date:  February 26, 2025

Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

negotiated choice-of-law clauses."  *Colaco v. Cavotec SA*, 25 Cal. App. 5th 1172, 1188 (Ct. App. 2018), reh'g denied (Aug. 10, 2018), review denied (Oct. 24, 2018).

To begin, PennyMac argues that Maryland has a substantial relationship to the parties or their transaction and there is a reasonable basis for the choice-of-law provision because PennyMac is organized under the laws of Maryland and the Articles are creatures of Maryland law.  (PennyMac MTD at 14–15).  Moreover, Plaintiff, who is a resident of New Jersey and has not alleged that he purchased PennyMac shares or was otherwise harmed in California, failed to prove California has a materially greater interest than Maryland in applying its law.  (PennyMac Reply at 10).

Plaintiff responds that, while PennyMac was formed under Maryland law and PNMAC under Delaware law, both Defendants have a personal place of business in California.  (PennyMac Opp. at 23) (citing Complaint ¶¶ 28–29).  Plaintiff further argues that the misconduct occurred in California.  (PennyMac Opp. at 23).  Plaintiff acknowledges that Maryland has an interest in the determination of this case but argues that the Maryland Consumer Protection Act ("MCPA")—Maryland's equivalent of the UCL— "conflicts with the fundamental California policy of allowing private parties to act on behalf of the Attorney General to hold California-based companies accountable and to seek equitable relief for the public." (*Id.* at 26).  Plaintiff then cites to *Walter v. Hughes Commc'ns, Inc*, in which a district court analyzed the MCPA and found that enforcing a choice-of-law provision would deprive a plaintiff the right to seek injunctive relief on behalf of the public under the UCL.  (*Id.*) (citing *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1042 (N.D. Cal. 2010)).

The hearing focused on this difficult issue.  Having considered the issue further, and despite the cogent arguments of Defendant, the Court still agrees with Plaintiff that the application of Maryland law is not appropriate here and finds *Walter* instructive.  As analyzed by the district court in *Walter*, "the greatest difference between California and Maryland law appears to be in the remedies available to plaintiffs."  682 F. Supp. 2d at 1039.  While the UCL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

permits a plaintiff to bring a claim for injunctive relief, as Plaintiff does here, the
MCPA allows only the attorney general to seek an injunction and limits
plaintiffs to recovering damages.  *See* MCPA §§ 13–406, 13-408 (allowing
attorney general to seek injunction; making no mention of private plaintiffs); *see
also Citaramanis v. Hallowell*, 328 Md. 142, 153 (1992) ("[T]he [M]CPA's
public enforcement mechanisms are set up to prevent potentially unfair or
deceptive trade practices from occurring, even before any consumer is injured,
whereas § 13–408(a) requires that actual 'injury or loss' be sustained by a
consumer before recovery of damages is permitted in a private cause of
action.").  Acknowledging California's policy favoring deterrence of harm to
consumers within the state, the *Walter* court reasoned that, "where a difference
in available remedies implicates a fundamental policy set out in California law,
the reviewing court must at least take pause before it allows the parties to
contract around those policies by choosing to apply foreign law."  *Walter*, 682 F.
Supp. at 1041.

Here, the Court similarly concludes that "the MCPA does not share the
same spirit of direct public action" as the UCL, which allows for plaintiffs to
pursue injunctive relief, at least in part, as "a deterrent and check on public
harm."  *Id.* (discussing a different California statute but noting the UCL "raise[s]
similar policy concerns").  Because the MCPA limits plaintiff to compensatory
damages, the Court concludes the choice-of-law provision conflicts with a
fundamental policy of California's consumer protection laws.

Having established the important difference between the UCL and MCPA,
the Court must now determine whether California has a "materially greater
interest" in imposing its laws to resolve the current dispute.  *Williams*, 384 F.
Supp. 3d at 1056.  Here,

California has a stronger interest in protecting its consumers
through its chosen mechanisms—a statutory scheme that permits its
injured consumers not only to bring class actions to recover their losses,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)              Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

but also to seek . . .  injunctive relief in order to deter and prevent future
harm to other consumers located in the state.

*Walter*, 682 F. Supp. at 1041.

At the hearing, PennyMac argued that the emphasis in *Walter* on
protecting consumers or providing relief for the public was not similarly a
concern here—an action addressing the rights of shareholders vis-à-vis a
corporation.  But California does in fact have an interest in regulating and
holding accountable California-based companies that take actions within the
state to harm ordinary retail investors.  *See Ribbens Int'l, S.A. de C.V. v. Transp.
Int'l Pool, Inc.*, 47 F. Supp. 2d 1117, 1123 (C.D. Cal. 1999) (noting California
has "a significant regulatory interest" in applying its law "to its corporate
resident . . . with respect to [the corporation's] California business
transactions.").  And while Maryland of course maintains an interest in
interpreting contracts—like the Articles—that were created pursuant to its laws,
the Court concludes that California has a greater interest in offering protections
to both in-state and out-of-state investors who both contract with California-
based companies and also expect such companies to act in a manner consistent
with Congressional policy goals.

Accordingly, the Court determines that California law governs this action.

## 2.  UCL Claim

PennyMac next argues that Plaintiff fails to state a claim under the UCL.
(PennyMac MTD at 17–27).  The UCL prohibits "any unlawful, unfair or fraudulent
business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal.
Bus. & Prof. Code § 17200.  "[I]t establishes three varieties of unfair competition—
acts or practices which are unlawful, or unfair, or fraudulent."  *Cel-Tech Commc'ns,
Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 180 (1999) (internal quotation marks
omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

### a.  Whether PennyMac Complied with the LIBOR Act

"In prohibiting 'any unlawful' business practice, the UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1130 (9th Cir. 2014) (quoting *Cel-Tech Commc'ns, Inc*, 20 Cal.4th at 180).

The crux of Plaintiff's claim is that PennyMac violated the LIBOR Act by issuing dividends at a fixed rate instead of adopting the Secured Overnight Financing Rate ("SOFR")—the appropriate replacement benchmark under the Act.  (PennyMac Opp. at 7).  Plaintiff argues that the Articles are "tough legacy contracts," which the Federal Reserve defines as: "contracts that reference USD LIBOR and will not mature by June 30, 2023, but which lack adequate fallback provisions providing for a clearly defined or practicable replacement benchmark following the cessation of USD LIBOR."  (*Id.* at 15) (citing 88 Fed. Reg. at 5205; 12 U.S.C. §5801(b)(1)).  Plaintiff contends that the Articles do not provide a clearly defined or practicable fallback provision, nor do they comport with the intent and understanding of the parties that dividends be issued at a floating rate.  (PennyMac Opp. at 15).  Moreover, the apparent legislative purpose supports the finding that PennyMac's decision to convert its floating-rate notes into fixed-rate notes is exactly what Congress sought to prevent with the LIBOR Act.  (*Id.* at 20).  Therefore, Plaintiff argues that PennyMac violated the LIBOR Act when it decided to issue dividends at a fixed rate in perpetuity, rather than adopting SOFR.  (*Id.*).

PennyMac disputes Plaintiff's characterization of the Articles as a "tough legacy contract" because Section 4(g) contains a clearly defined and workable fallback provision.  (PennyMac MTD at 18–20).  Relying on the text of the statute and the Articles, PennyMac argues that, because it paid dividends on the Preferred Shares in accordance with the fallback provision in Section 4(g), its acts were lawful.  (*Id.* at 21).

If the language of a statute is clear and unambiguous, a court need not look beyond the statute's provisions.  *In re Plant Insulation Co.*, 734 F.3d 900, 910 (9th Cir. 2013).  If, however, the language is subject to more than one interpretation, it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 24-05028-MWF (JCx)                    Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

ambiguous, and the court endeavors to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute.  *Id.*; *see also In re Ferrell*, 539 F.3d 1186, 1191 (9th Cir. 2008).

Therefore, the Court begins by analyzing the text of the statute.  In relevant part, the LIBOR Act mandates as follows:

"On the LIBOR replacement date, the Board-selected benchmark replacement shall be the benchmark replacement for any LIBOR contract that, after giving any effect to subsection (b)—

(1) contains no fallback provisions; or

(2) contains fallback provisions that identify neither—

(A) a specific benchmark replacement; nor

(B) a determining person."

12 U.S.C. § 5803(a).

The statute defines a "benchmark replacement" as "a benchmark**, *or an interest rate or dividend rate (which may or may not be based in whole or in part on a prior setting of LIBOR)*,** to replace LIBOR or any interest rate or dividend rate based on LIBOR, whether on a temporary, permanent, or indefinite basis[.]"  *Id.* § 5802(3) (emphasis added).  And a "benchmark" is defined as "an index of interest rates or dividend rates that is used … as the basis of or as a reference for calculating or determining any valuation, payment, or other measurement."  *Id.* § 5802(1).

The parties primarily dispute the meaning and purpose of the clause set off by boldface in the "benchmark replacement" definition.  PennyMac reads the clause as creating items in a series, such that a benchmark replacement, as defined in the statute, may encompass either a benchmark, interest rate, or dividend rate.  (PennyMac MTD at 20–21).  Plaintiff, on the other hand, contends that the clause is an appositive clause

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

intended to explain, not contradict, the term "benchmark."  (PennyMac Opp. at 18).
Plaintiff contends that PennyMac's interpretation of the clause misconstrues the
language, construction, and purpose of the Act, as the interpretation goes beyond the
legislative and ordinary meaning of "benchmark."  (*Id.*).

The Court is aware of no relevant authority analyzing the construction of § 5803.
The parties' divergent interpretations—both of which appear plausible from the plain
meaning of the text—indicate some level ambiguity within the statute.  As such, the
Court is not prepared at this stage to hold that PennyMac's actions comport with either
the purpose or overall structure of the LIBOR Act.  Rather, it appears that accepting
PennyMac's interpretation of its obligations under the Act would result in enforcement
of the exact type of contract Congress sought to reform.

Notably, Plaintiff has proffered sufficient evidence from the legislative history
indicating that a principal concern of the Act may have been to prevent floating-rate
instruments from unfairly converting into fixed-rate instruments.  (*See e.g.*, Docket No.
40-3 at 5) (referring to "adjustable rate" instruments); (Docket No. 40-1 at 61)
("Conversely, many floating-rate notes and securitizations have problematic fallback
language—generally, these contracts convert to fixed-rate instruments at the last
published value of LIBOR.").

That is precisely what has happened to the Articles here.  Section 4(g) is a
"waterfall centered on LIBOR, reflecting a series of steps . . . for when LIBOR is
unavailable on a particular date by a specified time[.]"  (PennyMac Opp. at 15).
Applying the Act to Section 4(g) of the Articles thus leaves operable only the final
clause, which directs the issuance of dividends based on "the dividend rate in effect for
the immediately preceding Dividend Period."  (*See id.*); (*see also* Articles at § 4(g)).
As such, PennyMac interprets its obligation under the Act and the Articles to allow it
to issue dividends at a fixed rate, pursuant to the final clause, in perpetuity.

PennyMac argues that this interpretation comports with another fundamental
purpose of the LIBOR Act, which seeks to limit interference or impairment of
contracts that do contain adequate benchmark replacements.  (PennyMac MTD at 21)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

(citing 12 U.S.C. § 5803(f)(2)).  By continuing to issue dividends at fixed rates,
PennyMac contends that it is issuing dividends pursuant to the terms that the parties
agreed to.

The Court is not persuaded.  Plaintiff has sufficiently alleged that the parties
neither contemplated nor agreed that the Articles would convert into a fixed-rate
instrument at the last published value of LIBOR.  Section 4(a) of the Articles states
that PennyMac would issue dividends at an initial "Fixed Rate Period" that would last
from the initial date of issuance in 2017 through March or June 2024 for the Series A
and Series B Preferred Shareholders respectively.  (Articles at § 4(a)).  Following that
"Fixed Rate Period," however, would be a "Floating Rate Period" in which dividends
would issue at a specified floating rate.  (*Id.*).  In light of Section 4(a)'s designation of
the Preferred Shares as fixed-to-floating securities, Plaintiff has sufficiently established
that the parties did not agree to a fixed-rate instrument.  Thus, allowing PennyMac to
issue dividends according to its interpretation would not support the Act's apparent
goal of leaving intact "the contractual terms the parties had agreed to."  (PennyMac
MTD at 21).

Accordingly, Plaintiff has sufficiently alleged that PennyMac violated the
LIBOR Act when it issued dividends at a fixed rate.

**b.  Safe Harbor**

PennyMac also argues that Plaintiff's claim is barred in its entirety by the UCL's
safe harbor, which immunizes from UCL liability practices that are approved by the
government.  (PennyMac MTD at 23).  Specifically, where the government "has
permitted certain conduct or considered a situation and concluded no action should
lie," courts may not override that determination.  *Barber v. Nestle USA, Inc.*, 154 F.
Supp. 3d 954, 958 (C.D. Cal. 2015) (quoting *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at
182).

PennyMac argues that, because the Articles "fall within the LIBOR contracts
that Congress expressly" permitted to operate, Plaintiff's claim fails.  (PennyMac MTD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)              Date:  February 26, 2025

Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

at 23). However, the Court concluded above that PennyMac's conduct was unlawful under the LIBOR Act, and the Articles fall within the type of contracts Congress was seeking to regulate through the Act.  Accordingly, PennyMac is not entitled to protection under the UCL's safe harbor.

### c.  Whether PennyMac's Actions were "Unfair"

Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer.  *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020).

Plaintiff argues that PennyMac's conduct was unfair under all three tests.  First, the LIBOR Act provides a clear public policy mandate to prevent floating-rate instruments from unfairly converting into fixed-rate instruments.  (PennyMac Opp. at 20).  Second, PennyMac "took advantage of ordinary retail investors who have and will continue to lose dividend income from their retirement portfolios[.]"  (*Id.*).  Third, PennyMac has no policy justification that outweighs the significant harm imposed on the Preferred Shareholders.  (*Id.*)

PennyMac responds that its conduct fully complies with the LIBOR Act and thus, the challenged conduct is not tethered to any specific statutory provision. (PennyMac MTD at 26).  Moreover, if PennyMac transitioned to the SOFR, as Plaintiff requests, "PennyMac would have unjustly favored one class of shareholders over another."  (*Id.*).

The Court concludes Plaintiff has satisfied his burden under the first test because the challenged conduct is sufficiently tethered to a policy goal for which Congress enacted the LIBOR Act.  *See In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-05028-MWF (JCx)                    Date:  February 26, 2025
Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

Supp. 3d 1051, 1116 (N.D. Cal. 2015) ("Plaintiffs need merely to show that the effects of [defendants'] conduct 'are comparable to or the same as a violation of the law, or otherwise significantly threaten[ ] or harm[ ] competition.'" (emphasis omitted)).

Accordingly, the PennyMac MTD is **DENIED.**

### B.     **PNMAC MTD**

PNMAC incorporated by reference the arguments in the PennyMac MTD and raised one additional ground for dismissal.  (PNMAC MTD at 3).  PNMAC further contends that Plaintiff fails to state a claim against it because Plaintiff does not plausibly allege that PNMAC itself engaged in any wrongdoing.  (*Id.*).  PNMAC argues that the Complaint alleges that the Articles require PennyMac, and not PNMAC, to issue dividends at a different rate, but the Complaint does not allege that PNMAC issues shares or dividends or that PNMAC is a party to the Articles.  (*Id.*)  As such, PNMAC argues the Complaint fails to allege any basis for liability against PNMAC under the UCL.

Plaintiff responds that the Complaint asserts that both Defendants committed the same acts giving rise to this lawsuit and that PNMAC is PennyMac's California-based external manager. (PNMAC Opp. at 3).  Plaintiff then explains that the PennyMac's own filings with the U.S. Securities and Exchange Commission state that PNMAC is responsible for administering PennyMac's day-to-day activities, including "making all or substantially all of its investment, financing, and risk management decisions."  (*Id.*).

The Court agrees that the Complaint satisfies the requirement under Rule 8 to provide a "short and plain statement" giving PNMAC fair notice of the claims against it and the grounds upon which they rest.  Fed. R. Civ. P. 8.  Although the Complaint predominantly refers to Defendants collectively, the parties do not dispute that PennyMac, which is a mortgage real estate investment trust, is externally managed by PNMAC.  (Complaint at ¶ 2); (PennyMac MTD at 9).  Nor do Defendants claim that PennyMac internally manages itself.  The Court thus concludes Plaintiff has met its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 24-05028-MWF (JCx)**                **Date:  February 26, 2025**

Title: Roberto Verthelyi v. PennyMac Mortgage Investment Trust, et al.

burden because PNMAC's role as the external manager of the trust directly implicates it in the misconduct alleged by Plaintiff.

Accordingly, both Motions are **DENIED.**  Defendants shall file an Answer to the Complaint on or before **March 28, 2025**.

IT IS SO ORDERED.