UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Jonas P. Mann (SBN 263314)
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
jonas@umklaw.com

*Attorneys for Defendants PennyMac Mortgage Investment Trust and PNMAC Capital Management LLC*

Steven M. Farina (*pro hac vice*)
Melissa B. Collins (*pro hac vice*)
sfarina@wc.com
mcollins@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC  20024
Telephone: 202-434-5000
Facsimile: 202-434-5029

*Attorneys for Defendant PennyMac Mortgage Investment Trust*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO VERTHELYI, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>PENNYMAC MORTGAGE INVESTMENT TRUST; PNMAC CAPITAL MANAGEMENT, LLC,<br><br>            Defendants. | Case No. 2:24-cv-05028-MWF<br><br>**DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND TO STAY PROCEEDINGS PENDING APPEAL**<br><br>Hearing Date:  April 28, 2025<br>Time: 10:00 a.m.<br>Place:  Courtroom 5A<br>Judge: Michael W. Fitzgerald |

**TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 28, 2025, at 10:00 a.m., or such other date ordered by the Court, in Courtroom 5A of this Court, located at First Street Courthouse, 350 W. First Street, Los Angeles, California, Defendants PennyMac Mortgage Investment Trust and PNMAC Capital Management, LLC will and hereby do move to certify this Court's February 26, 2025 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and for a stay of proceedings pending resolution of the appeal.

This Motion is based upon the Memorandum of Points and Authorities submitted herewith, any reply memorandum or other papers submitted in connection with this Motion, all other pleadings and filings in this action, and such other matters as may be presented at or before the hearing.  Defendants respectfully request oral argument on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 17, 2025.

Dated: March 25, 2025                        Respectfully submitted,

                                             */s/ Matthew Donald Umhofer*
                                             UMHOFER, MITCHELL & KING, LLP
                                             Matthew Donald Umhofer
                                             Jonas P. Mann

                                             *Attorneys for Defendants PennyMac
                                             Mortgage Investment Trust and PNMAC
                                             Capital Management, LLC*

                                             WILLIAMS & CONNOLLY LLP
                                             Steven M. Farina (*pro hac vice*)
                                             Melissa B. Collins (*pro hac vice*)

                                             *Attorneys for Defendant PennyMac
                                             Mortgage Investment Trust*

ii

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 2

III.  ARGUMENT ..................................................................... 4

    A.    This Court Should Certify For Immediate Appeal The Question of Whether Maryland Law Governs This Dispute. ........................................ 4

        1.    This Issue Presents a Controlling Question of Law. ...................... 5

        2.    Substantial Grounds Exist for a Difference of Opinion. ................ 6

        3.    Permitting Immediate Appeal Would Materially Advance the Termination of the Litigation........................................ 11

    B.    This Court Should Certify For Immediate Appeal The Question of Whether PennyMac's Fallback Dividend Rates Are Qualifying "Benchmark Replacements" Under The LIBOR Act. .......................... 11

        1.    This Issue Presents a Controlling Question of Law. ................... 13

            a.    This Issue is Purely Legal................................... 13

            b.    This Issue is Controlling..................................... 14

        2.    Substantial Grounds Exist for a Difference of Opinion. .............. 15

        3.    Permitting Immediate Appeal Would Materially Advance the Termination of the Litigation........................................ 17

    C.    The Court Should Stay Further Litigation Pending Resolution of the Appeal. ........................................................ 18

IV.   CONCLUSION ................................................................. 20

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*26 Cap. Acquisition Corp. v. Tiger Resort Asia Ltd.*,
   309 A.3d 434 (Del. Ch. 2023) .................................................. 9

*Aliya Medcare Fin., LLC v. Nickell*,
   2015 WL 4163088 (C.D. Cal. July 9, 2015).................................. 5

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*,
   2015 WL 10791930 (C.D. Cal. Nov. 5, 2015) ............................ 19

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016)...................................... 18

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
   634 F. Supp. 2d 1081 (E.D. Cal. 2008) ................................ 17, 18

*Barber v. Nestle USA, Inc.*,
   154 F. Supp. 3d 954 (C.D. Cal. 2015) ...................................... 15

*Bernal v. Zumiez, Inc.*,
   2017 WL 4542950 (E.D. Cal. Oct. 11, 2017)............................. 18

*Blue Chip Cap. Fund II Ltd. P'ship v. Tubergen*,
   906 A.2d 827 (Del. Ch. 2006) .................................................. 8

*Burton v. Prudential Ins. Co. of Am.*,
   2014 WL 10537434 (C.D. Cal. Sept. 12, 2014) ........................ 13

*Cal Pure Pistachios, Inc. v. Primex Farms, LLC*,
   2010 WL 11523707 (C.D. Cal. Apr. 29, 2010) ............................ 2

*California Dep't of Toxic Substances Control v. Hearthside Residential Corp.*,
   2008 WL 8050005 (C.D. Cal. Dec. 8, 2008) .............................. 20

*Casas v. Victoria's Secret Stores, LLC*,
   2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ............................ 18

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1981) ............................................ 2, 14

*City of Los Angeles v. Citigroup Inc.*,
   2014 WL 3942457 (C.D. Cal. Aug. 12, 2014) ............................. 6

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
   412 F. Supp. 2d 1059 (E.D. Cal. 2006) ..................................... 6

*Czuchaj v. Conair Corp.*,
   2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ............................. 5

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*,
   854 F. Supp. 2d 756 (C.D. Cal. 2011) ...................................... 15

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
AND FOR A STAY OF PROCEEDINGS*

*In re DirecTV Early Cancellation Fee Mktg.*,
    2011 WL 13135572 (C.D. Cal. Oct. 24, 2011) ...................................... 6, 7

*Doe 1 v. Github, Inc.*,
    2024 WL 4336532 (N.D. Cal. Sept. 27, 2024) ....................................... 14

*Douglas v. Xerox Bus. Servs., LLC*,
    875 F.3d 884 (9th Cir. 2017) ..................................................................... 13

*Dupree v. Younger*,
    598 U.S. 729 (2023) ................................................................................... 13

*Dynacorp Ltd. v. Aramtel Ltd.*,
    56 A.3d 631 (Md. Ct. Spec. App. 2012) ................................................... 10

*E.E.O.C. v. Luce, Forward, Hamilton & Scripps*,
    345 F.3d 742 (9th Cir. 2003) ..................................................................... 17

*EB Holdings II, Inc. v. Illinois Nat'l Ins. Co.*,
    108 F.4th 1211 (9th Cir. 2024) .................................................................... 5

*Ehart v. Lahaina Divers, Inc.*,
    92 F.4th 844 (9th Cir. 2024) ...................................................................... 13

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
    545 U.S. 546 (2005) ................................................................................... 17

*Feld v. Am. Exp. Co.*,
    2010 WL 9593386 (C.D. Cal. Jan. 25, 2010) .............................................. 9

*Filtrol Corp. v. Kelleher*,
    467 F.2d 242 (9th Cir. 1972) ..................................................................... 18

*Finder v. Leprino Foods Co.*,
    2017 WL 1355104 (E.D. Cal. Jan. 20, 2017) ...................................... 19, 20

*Flintkote Co. v. Aviva PLC*,
    177 F. Supp. 3d 1165 (N.D. Cal. 2016) ....................................................... 5

*Gale v. Bershad*,
    1998 WL 118022 (Del. Ch. Mar. 4, 1998) .................................................. 8

*Galilea, LLC v. AGCS Marine Ins. Co.*,
    879 F.3d 1052 (9th Cir. 2018) ..................................................................... 6

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
    2011 WL 13257346 (N.D. Cal. July 18, 2011) .......................................... 15

*Hamby v. Ohio Nat. Life Assur. Corp.*,
    2012 WL 2568149 (D. Haw. June 29, 2012) ............................................... 5

*Hoffman v. Citibank (S. Dakota), N.A.*,
    546 F.3d 1078 (9th Cir. 2008) ..................................................................... 6

v

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ..................................................................... 4, 5

*Irwin Nats. v. Securenet, LLC*,
2010 WL 11598030 (C.D. Cal. May 25, 2010) ................................................ 9

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..................................................................... 11

*Kim v. Cedar Realty Tr., Inc.*,
116 F.4th 252 (4th Cir. 2024) ........................................................................ 8

*Kloeckner v. Solis*,
568 U.S. 41 (2012) ........................................................................................ 17

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ...................................................................................... 13

*Manes v. City of Santa Ana*,
2023 WL 8115865 (C.D. Cal. Sept. 5, 2023) ................................................ 18

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ...................................................................................... 7

*Mehedi v. View, Inc.*,
2024 WL 3748012 (N.D. Cal. Aug. 8, 2024) ................................................. 20

*Melt Franchising, LLC v. PMI Enters., Inc.*,
2009 WL 32587 (C.D. Cal. Jan. 2, 2009) ....................................................... 5

*Moriarty v. Am. Gen. Life Ins. Co.*,
2021 WL 9563310 (S.D. Cal. Jan. 26, 2021) ................................................ 19

*Mothershead v. Wofford*,
2022 WL 2755929 (W.D. Wash. July 14, 2022) ............................................ 15

*Namleb Corp. v. Garrett*,
814 A.2d 585 (Md. Ct. Spec. App. 2002) ........................................................ 9

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
2013 WL 12306438 (C.D. Cal. July 11, 2013) .............................................. 14

*Palomino v. Facebook, Inc.*,
2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ....................................................... 9

*Poling v. CapLease, Inc.*,
2016 WL 1749803 (Md. Ct. Spec. App. May 3, 2016) .................................... 8

*Pro Water Sols., Inc. v. Angie's List, Inc.*,
2021 WL 124496 (C.D. Cal. Jan. 13, 2021) .................................................... 5

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ........................................................... 2, 6, 11, 17

vi

*Regal Stone Ltd. v. Longs Drug Stores California, L.L.C.*,
   881 F. Supp. 2d 1123 (N.D. Cal. 2012) ...................................................... 18

*Rieve v. Coventry Health Care, Inc.*,
   870 F. Supp. 2d 856 (C.D. Cal. 2012) ......................................................... 6

*Rollins v. Dignity Health*,
   2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ........................................... 10

*In re SFPP Right-of-Way Claims*,
   2016 WL 11744979 (C.D. Cal. Dec. 5, 2016) ............................................ 19

*San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*,
   53 F.4th 1136 (9th Cir. 2022) .................................................................... 13

*Shiguago v. Occidental Petroleum Corp.*,
   2009 WL 10672734 (C.D. Cal. Nov. 23, 2009) ......................................... 11

*Shintom Co. v. Audiovox Corp.*,
   888 A.2d 225 (Del. 2005) ............................................................................ 8

*Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*,
   725 F. App'x 592 (9th Cir. 2018) ................................................................. 6

*Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*,
   2016 WL 11603022 (D. Ariz. Sept. 9, 2016) ............................................... 6

*Travelers Indem. Co. v. MTS Transp., LLC*,
   2012 WL 3929810 (W.D. Pa. Sept. 7, 2012)............................................... 10

*United States v. Woods*,
   571 U.S. 31 (2013).................................................................................... 16

*Vitek v. Bank of America, N.A.*,
   2014 WL 1042397 (C.D. Cal. Jan. 23, 2014) ............................................... 5

*Walter v. Hughes Communications, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2008) ....................................................... 9

*Walters v. Metro. Educ. Enters., Inc.*,
   519 U.S. 202 (1997).................................................................................. 16

*Wang Lab'ys, Inc. v. Kagan*,
   990 F.2d 1126 (9th Cir. 1993) .................................................................. 11

*Wash. Mut. Bank, FA v. Superior Ct.*,
   24 Cal. 4th 906 (2001) ................................................................................ 4

**STATUTES**

12 U.S.C. § 5802(1) .................................................................................... 16

12 U.S.C. § 5802(3) ............................................................................*passim*

12 U.S.C. § 5803(a)(2), (f)(2) ..................................................................... 13

*PENNYMAC MORTGAGE INVESTMENT TRUST'S MOTION FOR
INTERLOCUTORY APPEAL*

12 U.S.C. §§ 5801–5807 .................................................................................... 3

28 U.S.C. § 1292(b) ..................................................................................*passim*

Cal. Bus. & Prof. Code § 17200 ................................................................ 1, 11

Md. Code Ann., Corps. & Ass'ns § 8-101(b) ................................................. 10

**RULES**

Fed. R. App. P. 5(a)(3) .................................................................................... 2

*PENNYMAC MORTGAGE INVESTMENT TRUST'S MOTION FOR INTERLOCUTORY APPEAL*

## I.    **INTRODUCTION**

Pursuant to 28 U.S.C. § 1292(b), Defendants PennyMac Mortgage Investment Trust ("PennyMac") and PNMAC Capital Management, LLC ("PCM") respectfully request that this Court certify its February 26, 2025 Order, ECF No. 52 ("Order"), for interlocutory appeal and stay further proceedings pending resolution of the appeal. Section 1292(b) permits the Court to certify for interlocutory appeal an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" when "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The Court's February 26 Order presents two issues meeting these criteria:

1.    Whether, as a matter of law, the choice-of-law provision in PennyMac's operative charter document (the "Declaration of Trust") compels the application of Maryland law.

2.    Whether, as a matter of law, PennyMac's fallback dividend rate is a qualifying "benchmark replacement" under the LIBOR Act, 12 U.S.C. § 5802(3), such that the use of that rate complies with the Act.

First, whether Maryland law governs this dispute is a "controlling" question of law because Plaintiff relies on California law to assert his only claim, which arises under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. If Maryland law applies, Plaintiff cannot state a UCL claim, and his complaint must be dismissed. Moreover, substantial grounds exist for a difference of opinion. Reasonable jurists could conclude that applying Maryland law is not contrary to a fundamental policy of California; nor does California have a materially greater interest than Maryland in the resolution of this dispute about the terms of a Maryland entity's governing documents. As this Court recognized during oral argument and expressly stated in its Order, the choice-of-law issue is a "difficult" one, Order 11, on which reasonable jurists could disagree.

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

Second, whether PennyMac's fallback dividend rates are "benchmark replacements" under the LIBOR Act is a "controlling" question of law because Plaintiff's UCL claim is grounded in PennyMac's alleged violation of that Act. If the Ninth Circuit agrees that PennyMac's fallback dividend rates comprise "benchmark replacements" under the Act, there is no dispute that PennyMac's use of those rates complies with the statute, and Plaintiff's complaint should be dismissed with prejudice. Substantial grounds exist for difference of opinion on this issue as well: as the Court noted, this is the first case to construe the relevant provisions of the LIBOR Act. *See* Order 16. This case-dispositive question of first impression is precisely the sort of "novel issue" appropriate for interlocutory appeal. *Reese v. BP Expl. (Alaska) Inc*., 643 F.3d 681, 688 (9th Cir. 2011).

Reversal on either of these issues would result in dismissal of the only claim asserted here, ending the litigation. Which state's law to apply and how to interpret the LIBOR Act are issues fundamental to the case. As a practical matter, these legal questions likely will be appealed by the non-prevailing party at some point, whether it is now, or after a final judgment. Allowing the parties to seek resolution now, prior to the start of discovery or entry of any case schedule, may save the parties and this Court needless expenditure of time, effort, and money. *See In re Cement Antitrust Litig*., 673 F.2d 1020, 1026 (9th Cir. 1981).

Defendants therefore request that this Court amend its Order to include the certification language required by § 1292(b), and stay further proceedings.[1]

## II.    **BACKGROUND**

In June 2024, Plaintiff Roberto Verthelyi brought this putative class action against Defendants, asserting a claim under California's UCL that their business practices were

---

[1] If the original order does not identify a question of law suitable for interlocutory appeal, it may be amended to include the requisite language. *See* Fed. R. App. P. 5(a)(3) (calling for the district court to "amend its order, either on its own or in response to a party's motion, to include the required permission or statement"); *Cal Pure Pistachios, Inc. v. Primex Farms, LLC*, 2010 WL 11523707, at *3 (C.D. Cal. Apr. 29, 2010).

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

"unlawful" and "unfair."  *See* ECF No. 1 ("Compl.").  Plaintiff grounds his UCL claim in PennyMac's alleged violation of a 2022 federal statute, the Adjustable Interest Rate (LIBOR) Act, 12 U.S.C. §§ 5801–5807.  The LIBOR Act provides guidance for how to interpret contracts that had relied on the discontinued London Inter-Bank Offered Rate ("LIBOR"), which were no longer workable according to their terms.  The Act directs that contracts without a qualifying "benchmark replacement" rate transfer to a rate based on the Secured Overnight Financing Rate ("SOFR"); it also provides that contracts that include a "benchmark replacement" ***not*** based on LIBOR continue to operate using the benchmark replacement rate found in the contract.  Plaintiff alleges that PennyMac violated the LIBOR Act by continuing to issue dividends for its Series A and B Preferred Shares at fixed rates pursuant to fallback provisions in its Articles Supplementary, rather than implementing a dividend rate based on SOFR.  Compl. ¶¶ 50–52.

Defendants moved to dismiss the complaint for failure to state a claim.  ECF No. 34 ("MTD"); ECF No. 35.  Defendants contended that (1) Plaintiff's UCL claim is not cognizable because PennyMac's operative charter document (the "Declaration of Trust") provides that Maryland law governs the dispute, MTD 8–10; and (2) even if the UCL applies, PennyMac's application of the terms set forth in the Articles Supplementary, in light of the LIBOR Act, complies with the Act, which expressly permits contracts like PennyMac's to continue using their contractual replacement rates. *See id.* 10–21.

On February 26, 2025, this Court denied the motions to dismiss.  The Court held that, although the choice-of-law provision in the Declaration of Trust applied to the dispute at hand, the provision was unenforceable as contradicting California policy, so "California law governs this action."  Order 8–13.  The Court also disagreed that PennyMac complied with the LIBOR Act as a matter of law, holding that the Act is "ambigu[ous]" and that Plaintiff had pled that PennyMac's actions do not "comport" with the Act's "purpose or overall structure."  *Id.* at 16.

Defendants now seek to certify the Court's Order for immediate appeal.

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

1    **III.    ARGUMENT**

2         Under 28 U.S.C. § 1292(b), the Court may certify for immediate appeal an

3    interlocutory order when (1) the order involves a controlling question of law; (2) there

4    is a substantial ground for difference of opinion as to that question; and (3) an immediate

5    appeal from that order may materially advance the ultimate termination of the litigation.

6    *See* 28 U.S.C. § 1292(b); *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,

7    22 F.4th 1125, 1130 (9th Cir. 2022).  Each question that Defendants seek to certify for

8    immediate appeal readily meets those requirements.

9         **A.    This Court Should Certify For Immediate Appeal The Question of**

10             **Whether Maryland Law Governs This Dispute.**

11        Courts applying California choice-of-law principles generally enforce contractual

12   choice-of-law provisions where the claims fall within the scope of the provision and the

13   chosen state bears "a substantial relationship to the parties or the transaction, or [] a

14   reasonable basis otherwise exists for the choice of law."   *Wash. Mut. Bank, FA v.*

15   *Superior Ct*., 24 Cal. 4th 906, 917 (2001).  If those conditions are satisfied, the opponent

16   of the clause bears the burden of showing "both that the chosen law is contrary to a

17   fundamental policy of California and that California has a materially greater interest in

18   the determination of the particular issue." *Id.*

19        This Court agreed with PennyMac that Plaintiff's allegations fall within the scope

20   of the Declaration of Trust's choice-of-law provision, and that the chosen state

21   (Maryland) has a substantial relationship to the parties and their transaction.  *See* Order

22   8–11.  The Court further held, however, that the choice-of-law provision is nonetheless

23   unenforceable because it "conflicts with a fundamental policy of California's consumer

24   protection laws" in terms of the remedies purportedly available, and because California

25   has a "greater interest" than Maryland in having its law applied to this dispute.  *Id.* at

26   12–13.

27

28

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
AND FOR A STAY OF PROCEEDINGS*

The question whether, as a matter of law, the Maryland choice-of-law provision is enforceable meets each of Section 1292(b)'s three criteria, and Defendants respectfully request that it be certified for appeal.

### 1.    This Issue Presents a Controlling Question of Law.

A "controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *ICTSI Oregon, Inc.*, 22 F.4th at 1130 (internal quotation marks omitted).

Here, whether PennyMac's Maryland choice-of-law provision is enforceable presents a "pure legal question" that is reviewed de novo on appeal. *Flintkote Co. v. Aviva PLC*, 177 F. Supp. 3d 1165, 1172 (N.D. Cal. 2016); *see EB Holdings II, Inc. v. Illinois Nat'l Ins. Co.*, 108 F.4th 1211, 1218 (9th Cir. 2024) ("We review choice-of-law questions de novo."). No facts are in dispute here; the Court took judicial notice of the Declaration of Trust as incorporated by reference into the complaint, Order 6, and the only question is the legal one of whether the choice-of-law provision within that Declaration of Trust governs the dispute. District courts often resolve choice-of-law disputes at the motion to dismiss stage where, as here, "the pleadings, construed in plaintiff's favor, contain all necessary facts." *Hamby v. Ohio Nat. Life Assur. Corp.*, 2012 WL 2568149, at *2 (D. Haw. June 29, 2012); *see Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014) (citing *Hamby*).

This question is also "controlling." California courts regularly dismiss UCL claims under Rule 12(b)(6) when a dispute is governed by another state's law, and application of Maryland law here would undisputedly require the same. *See Pro Water Sols., Inc. v. Angie's List, Inc.*, 2021 WL 124496, at *7 (C.D. Cal. Jan. 13, 2021) ("[a] valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's UCL"); *Aliya Medcare Fin., LLC v. Nickell*, 2015 WL 4163088, at *18–20 (C.D. Cal. July 9, 2015) (dismissing UCL claim on choice-of-law grounds); *Vitek v. Bank of America, N.A.*, 2014 WL 1042397, at *6–8 (C.D. Cal. Jan. 23, 2014) (same); *Melt Franchising, LLC v. PMI Enters., Inc.*, 2009 WL 32587, at *2–3 (C.D. Cal.

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

Jan. 2, 2009) (same); *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1063–65, 1070 (E.D. Cal. 2006) (same); *see* MTD 9–10.

The Ninth Circuit routinely accepts certification under Section 1292(b) to review the district court's choice of law determination when, as here, the facts are not in dispute. *See, e.g., Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1056 (9th Cir. 2018); *Starr Indem. & Liab. Co. v. Rolls-Royce Corp.,* 725 F. App'x 592, 594 (9th Cir. 2018); *Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1080, 1082 (9th Cir. 2008). This makes sense. If the Ninth Circuit determines that the district court "erred in its decision regarding the choice of law, every order from [this point] forward would require reversal and the entirety of the matter would be relitigated." *Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*, 2016 WL 11603022, at *1 (D. Ariz. Sept. 9, 2016). The same is true here. If the choice-of-law dispute is resolved in Defendants' favor, it would "put a stop to [the plaintiff's] litigation before substantial discovery and additional motion practice occurs." *City of Los Angeles v. Citigroup Inc.*, 2014 WL 3942457, at *2 (C.D. Cal. Aug. 12, 2014).

### 2.    Substantial Grounds Exist for a Difference of Opinion.

A substantial ground for difference of opinion exists where "reasonable jurists **might** disagree on an issue's resolution." *Reese*, 643 F.3d at 688 (emphasis added). The primary consideration is the "the strength of the arguments in opposition to the challenged ruling." *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) (citation omitted). Moreover, "where proceedings that threaten to endure for several years depend on an initial question of jurisdiction or the like, certification may be justified even if there is a relatively low level of uncertainty." *In re DirecTV Early Cancellation Fee Mktg.*, 2011 WL 13135572, at *2 (C.D. Cal. Oct. 24, 2011) (alteration and citation omitted).

The choice-of-law question easily clears this threshold. The Court's decision not to enforce the provision was based on its conclusion that "the choice-of-law provision conflicts with a fundamental policy of California's consumer protection laws" regarding

6

available remedies, Order 12, which the Court expressly noted was a "difficult issue,"
*id.* at 11.  As described below, a reasonable jurist can—and should—conclude that there
is no conflict regarding the remedies available under Maryland law, let alone a conflict
with a "fundamental policy of California."

The Court centered its analysis on the fact that the Maryland corollary to the UCL,
the Maryland Consumer Protection Act ("MCPA"), allows private citizens to sue for
damages, but only the attorney general may seek an injunction.  Order 12.  This, in the
Court's view, conflicts with a California public policy of deterring harm to consumers.
*Id.*  But the focus on the MCPA and the relief available under it overlooks the rest of the
vast body of Maryland law, which offers Plaintiff other avenues to seek effectively the
same relief:  PennyMac issuing dividends in compliance with Plaintiff's interpretation
of the Articles Supplementary and the LIBOR Act.

The parties' original briefing addressed the issue of whether the MCPA allows a
plaintiff to "seek injunctive relief on behalf of the public." ECF No. 37 ("Opp. to MTD")
21.  As PennyMac responded, that is of no matter, because Plaintiff does not seek "relief
for the public," ECF No. 41 ("MTD Reply") 4; he is seeking relief on behalf of Preferred
Shareholders, all of whom have a contractual relationship with PennyMac.[2]  However,
in concluding that applying Maryland law would conflict with an issue of fundamental
California policy, the Court stretched Plaintiff's argument beyond its terms about
"public" relief, and appears to have concluded that this Plaintiff, and the putative class,
would have no opportunity to seek equitable relief at all in Maryland.  That is simply
not the case.

---

[2] As the California Supreme Court explained in a similar context, "public injunctive relief" is "relief that has the primary purpose and effect of prohibiting unlawful acts that threaten injury to the general public," whereas private injunctive relief is "relief that primarily resolves a private dispute between the parties and rectifies individual wrongs and that benefits the public, if at all, only incidentally."  *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (alterations omitted) (internal quotation marks omitted).  Here, the only people who stand to benefit are the Preferred Shareholders, who have a private relationship with PennyMac, not the public at large.

7

1    PennyMac's Preferred Shareholders are not consumers in the typical sense,

2  purchasing a product from a company in a one-time transaction, or being exposed to

3  company advertisements.  As Preferred Shareholders, their rights vis-à-vis PennyMac

4  and other shareholders are governed by contract through the Declaration of Trust and

5  Articles Supplementary.  *See, e.g.*, *Kim v. Cedar Realty Tr., Inc.,* 116 F.4th 252, 260

6  (4th Cir. 2024) ("Claims that arise from the duties listed in the Articles [Supplementary]

7  are . . . treated as breach-of-contract claims.") (applying Maryland law); *Poling v.*

8  *CapLease, Inc*., 2016 WL 1749803, at *3 (Md. Ct. Spec. App. May 3, 2016) (rights of

9  preferred shareholders "are defined by contract"); *Shintom Co. v. Audiovox Corp.,* 888

10  A.2d 225, 228 (Del. 2005) ("the rights of the preferred shareholders, vis-à-vis other

11  shareholders, are fixed by the contractual terms agreed upon between the private

12  parties").

13    Consumer protection laws are not the only—or even the most natural—way to

14  enforce those rights.  Rather, because directors and officers are "contractually bound to

15  honor preferred stockholders' preferential rights," aggrieved shareholders routinely turn

16  to black letter corporate and contractual law for relief.  *Kim*, 116 F.4th at 256 (internal

17  quotation marks omitted) (lawsuit alleging that Maryland REIT "breached the

18  contractual and fiduciary duties they owe preferred stockholders by structuring the

19  transactions to rob them of their preferential rights"); *Blue Chip Cap. Fund II Ltd. P'ship*

20  *v. Tubergen*, 906 A.2d 827, 834 (Del. Ch. 2006) (lawsuit alleging that corporation

21  breached both contractual and fiduciary duties owed to preferred stockholders when it

22  distributed "an inflated amount" of money to a different class of shareholders); *Gale v.*

23  *Bershad*, 1998 WL 118022, at *1 (Del. Ch. Mar. 4, 1998) (lawsuit alleging that

24  corporation and its directors breached contractual terms in certification of incorporation

25  when it allegedly redeemed the preferred stock at "an unreasonably low and unfair

26  price").

27    California is not the only state that requires companies to comply with their

28  agreements with shareholders, nor are companies free to violate the LIBOR Act if they

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

lack a tie to California. If PennyMac had headquarters in Maryland, not California—such that California law was off the table—Plaintiff could still seek to enforce the terms of his contract, as modified by the LIBOR Act, using basic principles of corporate law. This includes, if he so desired, the ability to seek specific performance of the contract, an equitable remedy. *See, e.g.*, *Namleb Corp. v. Garrett*, 814 A.2d 585, 591 (Md. Ct. Spec. App. 2002) ("Specific performance may be granted in an appropriate case on the basis of the strength of the circumstances and equities of each party."); *accord 26 Cap. Acquisition Corp. v. Tiger Resort Asia Ltd.*, 309 A.3d 434, 464 (Del. Ch. 2023) ("Specific performance is a remedy for a proven breach of contract" (emphasis omitted)). Because avenues for equitable relief are available under Maryland law, there is no conflict with an issue of fundamental California policy here.

Even as to the Court's conclusion regarding relief under the MCPA specifically, reasonable jurists could disagree whether the different approach to remedies constitutes a conflict with fundamental California policy. The Court relied heavily on *Walter v. Hughes Communications, Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2008), finding it "instructive" on the question of whether there was a conflict on California policy. Order 11–12. But at least one other court in this district has rejected *Walter*'s approach of finding a fundamental conflict based on "the differences in remedies between Maryland law and the UCL." *Irwin Nats. v. Securenet, LLC*, 2010 WL 11598030, at *2 (C.D. Cal. May 25, 2010) (finding no conflict, particularly where plaintiff had not shown that other equitable relief was unavailable); *see also, e.g.*, *Palomino v. Facebook, Inc.*, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) (application of another state's law does not violate California public policy simply because it "affords different rights and remedies"); *Feld v. Am. Exp. Co.*, 2010 WL 9593386, at *4 (C.D. Cal. Jan. 25, 2010) (enforcing Utah choice-of-law provision even though Utah "permits class-actions waivers" and

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
AND FOR A STAY OF PROCEEDINGS*

California does not).[3]  The lack of a fundamental conflict is particularly true in this case, where the "equitable" or "injunctive" relief that Plaintiff seeks is the payment of money. Reasonable jurists may disagree that there is a fundamental policy conflict between ordering a defendant to pay money pursuant to an injunction as opposed to as damages.

Separately, reasonable jurists might disagree with this Court's conclusion that California has a materially greater interest than Maryland in "imposing its laws to resolve the current dispute."  Order 12–13.  Although the complaint pleads that defendants have headquarters in California, Compl. ¶¶ 28–29, PennyMac is organized under the laws of Maryland, *id*. ¶ 28, and the Articles Supplementary at issue are themselves creatures of Maryland law, *see, e.g.*, Md. Code Ann., Corps. & Ass'ns § 8-101(b).  Meanwhile, Plaintiff is a resident of New Jersey, and he does not allege that he purchased PennyMac shares or was harmed in California.  Compl. ¶ 27.  Thus, a reasonable jurist could conclude that California's interest in determining this dispute is minimal.

Maryland, by contrast, has a "significant interest" in "resolving disputes" arising from contracts expressly "governed by" its laws.  *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 681 (Md. Ct. Spec. App. 2012).  Where contracting parties specifically select Maryland law, they create a legitimate expectation that Maryland's carefully developed legal principles and policy determinations will apply to disputes arising from their agreement.  *See Travelers Indem. Co. v. MTS Transp., LLC*, 2012 WL 3929810, at *11 (W.D. Pa. Sept. 7, 2012) (noting Maryland's "significant interest in seeing its law govern contracts issued in its state to ensure consistency and predictability for its citizens.").  That is particularly true for parties engaged in multistate transactions, like PennyMac, who seek to minimize the "uncertainty" that occurs when faced with different laws in "every state in which it might be sued."  *Wang Lab'ys, Inc. v. Kagan*, 990 F.2d 1126,

---

[3] "One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed."  *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014).

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

1129 (9th Cir. 1993). Thus, a reasonable jurist could conclude that Maryland's interest here is stronger than California's, which provides an independent reason to find that substantial grounds exist for a difference of opinion.

### 3. Permitting Immediate Appeal Would Materially Advance the Termination of the Litigation.

Finally, an immediate appeal of this question would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiff's only claim arises under California law. If California law does not apply, his claim must be dismissed. *See supra* pp. 5–6. Although "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation," *Reese*, 643 F.3d at 688 (internal quotation marks omitted), where, as here, the appeal would have such a dispositive effect, there can be no question this prong is satisfied. *See Shiguago v. Occidental Petroleum Corp.*, 2009 WL 10672734, at *1 (C.D. Cal. Nov. 23, 2009) (certifying issue for interlocutory appeal where "resolution in Defendants' favor would effectively require dismissal of Plaintiffs' [claims].").

\*    \*    \*

For all of these reasons, the choice-of-law question satisfies the Section 1292(b) criteria. It would be efficient and appropriate to resolve this threshold issue now, at the outset, before discovery and the further expenditure of time and resources by the parties and the Court.

### B. This Court Should Certify For Immediate Appeal The Question of Whether PennyMac's Fallback Dividend Rates Are Qualifying "Benchmark Replacements" Under The LIBOR Act.

The UCL defines "unfair competition" as including "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate theory of liability. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Plaintiff purports to bring his claim under the "unlawful" and "unfair" prongs, *see* Compl. ¶¶ 72–82.

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

In its motion to dismiss, PennyMac argued that Plaintiff's complaint should be dismissed with prejudice because PennyMac has paid dividends on the Preferred Shares in accordance with the Articles as modified by the LIBOR Act. Specifically, PennyMac argued that its actions were not "unlawful" because the fallback provisions in the Articles provide "benchmark replacements" under the plain language of 12 U.S.C. § 5802(3). *See* MTD 14–15. PennyMac further argued that its actions were not "unfair" because, among other things, PennyMac's actions fall within the UCL's safe harbor and the LIBOR Act preempts any state law purporting to compel a rate contrary to the LIBOR Act. *See id.* at 17–19.

This Court, however, determined that the statutory term "benchmark replacement," 12 U.S.C. § 5802(3), was ambiguous, and looked beyond the plain text to legislative history and statutory purpose. Order 16. It concluded that one key purpose of the Act was "to prevent floating-rate instruments from unfairly converting into fixed-rate instruments," and held that, in light of that purpose, "accepting PennyMac's interpretation of its obligations under the Act would result in enforcement of the exact type of contract Congress sought to reform." *Id.*[4] Although the Court did not expressly state that it was adopting Plaintiff's construction of the statute, its holding that Plaintiff has "sufficiently alleged that PennyMac violated the LIBOR Act," Order 17, is grounded in a conclusion that PennyMac's fallback-dividend rate is not a qualifying "benchmark replacement" under the LIBOR Act. This statutory interpretation question satisfies the Section 1292(b) criteria.

---

[4] The Court rejected PennyMac's argument that its interpretation furthered another statutory purpose—namely, allowing workable contracts to continue operating according to their terms. *Id.* at 16–17. The Court did not dispute that the fallback language in the Articles provides for fixed rates, but held that because Plaintiff had alleged that the parties had not contemplated or agreed to a permanent fixed rate, "allowing PennyMac to issue dividends according to its interpretation [of the Articles] would not support the Act's apparent goal of leaving intact the contractual terms the parties had agreed to." *Id.* at 17 (internal quotation marks omitted).

12

1              **1.    This Issue Presents a Controlling Question of Law.**

2                      **a.    This Issue is Purely Legal.**

3        A pure legal question is one "that can be resolved without reference to any

4  disputed facts." *Dupree v. Younger*, 598 U.S. 729, 735 (2023).  Statutory interpretation

5  is the quintessential example.  *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369,

6  387 (2024) ("[T]he interpretation of the meaning of statutes" is a "question[] of law");

7  *Ehart v. Lahaina Divers, Inc*., 92 F.4th 844, 849 (9th Cir. 2024) (same).  "[T]he Ninth

8  Circuit has found novel question[s] of statutory interpretation to be particularly

9  appropriate occasions for certification."  *Burton v. Prudential Ins. Co. of Am.,* 2014 WL

10  10537434, at *2 (C.D. Cal. Sept. 12, 2014) (internal quotation marks omitted), *rev'd on*

11  *other grounds*, 669 F. App'x 829 (9th Cir. 2016); *see, e.g.*, *San Antonio Winery, Inc. v.*

12  *Jiaxing Micarose Trade Co.*, 53 F.4th 1136, 1140 (9th Cir. 2022); *Douglas v. Xerox Bus.*

13  *Servs., LLC*, 875 F.3d 884, 886 (9th Cir. 2017).

14        Here, the question presented is a "pure question of law" because it involves the

15  interpretation of a federal statutory provision and does not rest on any facts in dispute.

16  There is no dispute that, after disregarding LIBOR- and polling-based provisions in

17  accordance with the LIBOR Act, PennyMac's Articles provide that PennyMac issue

18  dividends at the "dividend rate in effect for the immediately preceding Dividend Period,"

19  which in this instance are the respective initial fixed rates for each series.  *See* Order 16

20  ("Applying the Act to Section 4(g) of the Articles . . . leaves operable only the final

21  clause"); Opp. to MTD 13–14 ("The final clause at the end of the waterfall in Section

22  4(g) [of the Articles] points to a fixed rate . . . .").  Nor is there any dispute that the

23  LIBOR Act does not "alter or impair" contractual fallback provisions that specify a

24  "benchmark replacement" that is not based on LIBOR, allowing those fallbacks to

25  operate according to their terms.  *See* 12 U.S.C. § 5803(a)(2), (f)(2); MTD 11–15.

26        Thus, as this Court recognized, "[t]he parties primarily dispute the meaning and

27  purpose" of 12 U.S.C. § 5802(3), the provision in the LIBOR Act which defines the

28  statutory term "benchmark replacement."  Order 15.  As PennyMac argued, the plain

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
AND FOR A STAY OF PROCEEDINGS*

language of the statutory text states that a "benchmark replacement" includes any "interest rate or dividend rate," regardless of whether that rate is fixed or variable.  12 U.S.C. § 5802(3); *see* MTD Reply 6–10; *infra* 15–17.  In Plaintiff's view, however, a "benchmark replacement" cannot be a fixed rate.  Opp. to MTD 11–14.  The Court found both readings "plausible," but ultimately decided that the statute is ambiguous and that PennyMac's "actions" do not "comport with either the purpose or overall structure of the LIBOR Act."  Order 16.

To review that holding on appeal, the Ninth Circuit would need to consult only a limited universe of legal and undisputed documents—namely, the statute and the Articles Supplementary, of which this Court properly took judicial notice.  *See* Order 4–6.  The question presented is therefore a "purely legal one" that be "resolved quickly without delving into [the] particular case's facts."  *Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.,* 2013 WL 12306438, at *6 (C.D. Cal. July 11, 2013); *Doe 1 v. Github, Inc.*, 2024 WL 4336532, at *1 (N.D. Cal. Sept. 27, 2024) (certifying "purely legal question of statutory interpretation").

### b.    This Issue is Controlling.

This legal question is "controlling" because "resolution of the issue on appeal could materially affect the outcome of litigation in district court."  *In re Cement*, 673 F.2d at 1026.  If the Ninth Circuit agrees with PennyMac's construction of the statute, the motion to dismiss must be granted.  Plaintiff's theory of liability under both the "unlawful" and "unfair" prongs of the UCL rests on PennyMac's alleged violation of the LIBOR Act.  *See* MTD 18.  If PennyMac's initial dividend rate fallback qualifies as a "benchmark replacement" under 12 U.S.C. § 5802(3), its use of that rate complies with the terms of the LIBOR Act, and no "unlawful" theory could survive.

Resolution in PennyMac's favor would also dispose of Plaintiff's theory that PennyMac's conduct was "unfair."  In his opposition, Plaintiff argued that, even if PennyMac did comply with the LIBOR Act, he still can state a claim under the UCL's "unfairness" prong.  Opp. to MTD 15–17.  That is wrong.  Although it may be

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
AND FOR A STAY OF PROCEEDINGS*

theoretically possible in some cases for a plaintiff to state a claim for an unfair practice under the UCL without a legal violation, this Plaintiff cannot do so. As PennyMac explained in its briefing, the LIBOR Act preempts any state law that would impose a different rate than the LIBOR Act. *See* MTD 18–19. Similarly, the UCL's safe-harbor immunizes UCL-liability practices that are approved by the government. *See* MTD 17–18; *Barber v. Nestle USA, Inc*., 154 F. Supp. 3d 954, 958 (C.D. Cal. 2015). Plaintiff does not dispute either of these legal points, instead arguing only that there is no preemption and the safe harbor does not apply because PennyMac in fact violated the Act. Opp. to MTD 17–18. Accordingly, if the Ninth Circuit holds that PennyMac arrived at and is applying its rate in accordance with the LIBOR Act, Plaintiff cannot and does not state a claim that the "unfair" prong requires a different rate. *See* MTD 18–19 & n.11.

### 2. Substantial Grounds Exist for a Difference of Opinion.

Construing the LIBOR Act's definition of "benchmark replacement," and whether by the statute's terms fixed dividend rates may qualify as "benchmark replacements," is an issue of first impression. This Court's order highlights the absence of any "relevant authority analyzing the construction [of the LIBOR Act]." Order 16. That no court in this Circuit or any other has "provide[d] . . . guidance" on the issue strongly indicates that substantial grounds exist for a difference of opinion. *Mothershead v. Wofford*, 2022 WL 2755929, at *2 (W.D. Wash. July 14, 2022); *see In re Google Inc. St. View Elec. Commc'ns Litig*., 2011 WL 13257346, at *1 (N.D. Cal. July 18, 2011) (certifying question for interlocutory appeal "in light of the novelty of the issues presented"); *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 854 F. Supp. 2d 756, 769 (C.D. Cal. 2011) (finding substantial grounds for difference of opinion where there was "no controlling precedent on th[e] issue"), *aff'd*, 744 F.3d 1124 (9th Cir. 2014).

The strength of PennyMac's arguments also support the conclusion that this question is one on which reasonable jurists may disagree. The statute defines a "benchmark replacement" as "a benchmark, *or an interest rate or dividend rate* (which

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

may or may not be based in whole or in part on a prior setting of LIBOR), to replace LIBOR or any interest rate or dividend rate based on LIBOR, whether on a temporary, permanent, or indefinite basis, under or with respect to a LIBOR contract." 12 U.S.C. § 5802(3) (emphasis added).  PennyMac maintains that this definition on its face encompasses any "benchmark," "interest rate," or "dividend rate" to replace a LIBOR rate.  MTD Reply 5–10.  Plaintiff, on the other hand, contends that a "benchmark replacement" must be a "benchmark" only, which is separately defined as "an index of interest rates or dividend rates that is used . . . as the basis of or as a reference for calculating or determining any valuation, payment, or other measurement."  12 U.S.C. § 5802(1).  Therefore, in Plaintiff's view, a "benchmark replacement" cannot be a fixed rate.  Opp. to MTD 11–14.

The Court found both interpretations "plausible," and determined that the statute was ambiguous.  Order 16.  In proceeding to compare PennyMac's actions against the "purpose" of the Act, the Court's opinion does not wrestle with how Plaintiff's proffered interpretation of the definition of "benchmark replacement" can be squared with ordinary rules of statutory construction.  It cannot.  MTD Reply 5–10.  By his own acknowledgement, Plaintiff would "remov[e]" the clause "or an interest rate or dividend rate" from the statute, Opp. to MTD 13; MTD Reply 7, which runs directly counter to the well-established principle that each statutory clause is to be given effect.  *See Walters v. Metro. Educ. Enters., Inc*., 519 U.S. 202, 207–209 (1997).  Nor does Plaintiff offer any compelling reason to depart from the ordinary use of the word "or," which the Supreme Court has held "is almost always disjunctive, that is, the words it connects are to be given separate meanings." *United States v. Woods*, 571 U.S. 31, 45–46 (2013) (internal quotation marks omitted); *see* MTD Reply 8.

In light of these principles and precedent, other reasonable jurists may conclude that the plain language of the LIBOR Act points squarely in PennyMac's favor, and therefore that PennyMac's initial fixed dividend rates qualify as "benchmark replacements" under the LIBOR Act.  "'[A]mbiguity' is a term that may have different

16

meanings for different judges." *Exxon Mobil Corp. v. Allapattah Services, Inc*., 545 U.S. 546, 572 (2005) (Stevens, J., dissenting).  If the meaning of the statutory text is plain, that is the end of the matter, and reliance on statutory purpose and legislative history is unnecessary and improper. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity we find in the statute's text."); *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 753 (9th Cir. 2003) ("Because the text . . . is unambiguous, we are precluded from considering legislative history").[5]

This statutory interpretation issue of first impression is ready for appeal now.  The Ninth Circuit has long recognized that a "novel issue" "on which fair-minded jurists might reach contradictory conclusions" "may be certified for interlocutory appeal without first awaiting development of contradictory precedent," *Reese*, 643 F.3d at 688, and the Court should do so here.

### 3. Permitting Immediate Appeal Would Materially Advance the Termination of the Litigation.

Finally, immediate appeal of this question would materially advance the ultimate termination of this litigation.  Plaintiff's complaint is premised on a purported violation of the LIBOR Act.  *See* MTD 18.  If the Ninth Circuit disagrees and finds that PennyMac's contractual fallback rates are qualifying "benchmark replacements" that should be given effect in compliance with the LIBOR Act, Plaintiffs UCL "unlawful" and "unfair" claims both fail and should be dismissed.  *See supra* pp. 14–15.[6]  Thus, an

---

[5] Reasonable jurists could also disagree with the Court's reading of the legislative history.  For example, the legislative history on which this Court's opinion relied referred to "'problematic fallback language'" when "'contracts convert to fixed-rate instruments *at the last published value of LIBOR*,'" Order 16 (quoting ECF No. 40-1 at 61) (emphasis added), but the rates at issue here are unrelated to the last published value of LIBOR.  And a reasonable jurist could conclude that PennyMac's interpretation is consistent with another purpose of the Act, which is allowing workable contracts to continue operating according to their terms.  *See* MTD 13; MTD Reply 13–14.

[6] Even if appellate resolution of the statutory interpretation of "benchmark replacement" did not entirely dispose of a claim under the "unfair prong," the court's

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

immediate appeal on the statutory question presented "may materially advance the ultimate termination of the litigation" by "ending" it. *Regal Stone Ltd. v. Longs Drug Stores California, L.L.C.*, 881 F. Supp. 2d 1123, 1131 (N.D. Cal. 2012).

\*        \*        \*

The Court's ruling on the statutory construction of the LIBOR Act's "benchmark replacement" satisfies the Section 1292(b) criteria. It lies at the heart of this dispute—whether PennyMac's use of the initial dividend rates as fallback rates does or does not comply with the Act—and would likely be the subject of an appeal in any event. There is no reason to delay resolution of this fundamental legal question.

## C.    The Court Should Stay Further Litigation Pending Resolution of the Appeal.

Defendants also request that the Court stay proceedings pending resolution of any appeal. "A district court has authority to stay proceedings pending a § 1292(b) appeal both under § 1292(b) itself and under the court's inherent authority to manage its docket." *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 13446989, at \*5 (C.D. Cal. Apr. 9, 2015); *see also Manes v. City of Santa Ana*, 2023 WL 8115865, at \*1 (C.D. Cal. Sept. 5, 2023) (a "court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it" (internal quotation marks omitted)). The Court "has broad discretion to decide whether a stay is appropriate to 'promote economy of time and effort for itself, for counsel, and for litigants.'" *Manes*, 2023 WL 8115865, at \*1 (quoting *Ass'n of Irritated Residents*, 634 F. Supp. 2d at 1094; *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)).

---

guidance would nonetheless "materially advance" the litigation. *See Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008). Discovery and briefing in those circumstances would focus on different issues, and class certification may be affected. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989–90 (N.D. Cal. 2016). Certification of even non-dipositive legal questions for immediate appeal is appropriate where, as here, "a putative class action is still in the pre-certification and pleading stage." *Bernal v. Zumiez, Inc.*, 2017 WL 4542950, at \*3 (E.D. Cal. Oct. 11, 2017) (internal quotation marks omitted).

18

When exercising that discretion and "determining whether to stay an action under 28 U.S.C. § 1292(b), a court considers whether (1) resolution by the Ninth Circuit of the issue addressed in [the appealed order] could materially affect this case and advance the ultimate termination of litigation and (2) whether a stay will promote [ ] economy of time and effort for the Court and the parties." *In Re SFPP Right-of-Way Claims*, 2016 WL 11744979, at *2 (C.D. Cal. Dec. 5, 2016) (internal quotation marks omitted); *see also Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 2015 WL 10791930, at *3 (C.D. Cal. Nov. 5, 2015) (applying same factors).

Both factors favor a stay here. First, as described above, resolving either of the issues presented in Defendants' favor will result in the termination of litigation, or at the very least, materially advance its termination. *See supra* pp. 11, 17–18; *Moriarty v. Am. Gen. Life Ins. Co.*, 2021 WL 9563310, at *2 (S.D. Cal. Jan. 26, 2021) (certifying for appeal and granting stay where defendant sought "to resolve the threshold legal question of whether" particular statutes applied to a life insurance policy, because if they did not, "Plaintiff's case [could] no longer proceed"); *see also Finder v. Leprino Foods Co*., 2017 WL 1355104, at *4 (E.D. Cal. Jan. 20, 2017) ("Allowing the Ninth Circuit to conclusively resolve the validity of roughly half of Plaintiffs' claims … will dramatically clear the landscape of this action.").

Second, a stay promotes judicial economy, conserving the court's and the parties' time and effort while these issues are evaluated on appeal. There is no case schedule in place, and discovery has not yet begun.[7] If the Ninth Circuit agrees with Defendants, the case will be dismissed, and there would be no need for the parties to engage in discovery at all, or other pre-trial litigation practice, such as class certification or dispositive motions. It would be inefficient to proceed with costly discovery and motions practice now, rather than wait to see if it can be avoided altogether. Accordingly, courts often grant stays pending interlocutory appeal, and this Court should

---

[7] Although styled as equitable relief under the UCL, the relief Plaintiff seeks is monetary, so Plaintiff will not be harmed by any delay.

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

do the same. *See, e.g.*, *Finder*, 2017 WL 1355104, at *4 ("Forcing [the appealing party] forward on the issues now pending on appeal would largely frustrate the savings in time and effort that the grant of interlocutory appeal would otherwise provide."); *Mehedi v. View, Inc.*, 2024 WL 3748012, at *2 (N.D. Cal. Aug. 8, 2024) (recognizing that "if the parties were required to continue litigating this case, much of the efficiency and benefit of an interlocutory appeal would be lost" and granting stay); *California Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 2008 WL 8050005, at *9 (C.D. Cal. Dec. 8, 2008) (granting stay).

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants request that this Court certify its Order of February 26, 2025, for interlocutory review pursuant to 28 U.S.C. § 1292(b), amend its Order to state that the necessary conditions for interlocutory review have been met, and issue a stay of further proceedings.

Dated: March 25, 2025                Respectfully submitted,

*/s/ Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Jonas P. Mann

*Attorneys for Defendants PennyMac Mortgage Investment Trust and PNMAC Capital Management LLC*

WILLIAMS & CONNOLLY LLP
Steven M. Farina (*pro hac vice*)
Melissa B. Collins (*pro hac vice*)

*Attorneys for Defendant PennyMac Mortgage Investment Trust*

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for PennyMac Mortgage Investment Trust, certifies the brief contains 6,322 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 25, 2025          Respectfully submitted,

*/s/ Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Jonas P. Mann

*Attorneys for Defendants PennyMac*
*Mortgage Investment Trust and PNMAC*
*Capital Management LLC*

WILLIAMS & CONNOLLY LLP
Steven M. Farina (*pro hac vice*)
Melissa B. Collins (*pro hac vice*)

*Attorneys for Defendant PennyMac*
*Mortgage Investment Trust*

*DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL*
*AND FOR A STAY OF PROCEEDINGS*