Nicole Lavallee (SBN 165755)
Email: nlavallee@bermantabacco.com
Daniel E. Barenbaum (SBN 209261)
Email: dbarenbaum@bermantabacco.com
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

Catherine Pratsinakis (Admitted *pro hac vice*)
Email: cpratsinakis@dilworthlaw.com
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7013

*Attorneys for Plaintiff Roberto Verthelyi
and the Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO VERTHELYI, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>PennyMac Mortgage Investment Trust and PNMAC Capital Management, LLC,<br><br>    Defendants. | No. 2:24-cv-05028-MWF-JC<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND TO STAY PROCEEDINGS PENDING APPEAL**<br><br>Date: April 28, 2025<br>Time: 10:00 a.m.<br>Ctrm: 5A<br>Judge: Michael W. Fitzgerald |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    BACKGROUND ........................................................................................ 3

III.   LEGAL STANDARD ................................................................................ 5

IV.    ARGUMENT ............................................................................................. 7

       A.     Application of California's Choice of Law Rule Cannot be
              Certified for Interlocutory Appeal. ....................................................... 7

              1.     Defendants have not raised a controlling question of law ......... 7

              2.     There is no substantial ground for difference of opinion. ....... 10

              3.     Certification will not materially advance the resolution of
                     this litigation. .......................................................................... 14

       B.     The Court's Determination that PennyMac's Use of the Fixed-
              Rate in Issuing the Dividends Violates the LIBOR Act Cannot be
              Certified for Interlocutory Appeal. ..................................................... 15

              1.     Defendants have not raised a controlling question of law ....... 15

              2.     Defendants cannot demonstrate that there are substantial
                     grounds for difference of opinion. ............................................ 18

              3.     Certification will not materially advance the resolution of
                     this litigation. .......................................................................... 21

V.     DEFENDANTS' MOTION TO STAY SHOULD BE DENIED ............... 21

VI.    CONCLUSION ........................................................................................ 22

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Hotel & Lodgings Ass'n v. City of Los Angeles*,
  2015 WL 10791930 (C.D. Cal. Nov. 5, 2015)......................................................21

*Arenholz v. Bd. of Trs.*,
  219 F.3d 674 (7th Cir. 2000)............................................................................6

*Avon Ins., PLC v. Lubinski*,
  1993 WL 300557 (N.D. Cal. July 22, 1993).....................................................13

*Bermudez v. PrimeLending*,
  2012 WL 12893080 (C.D. Cal. Aug. 14, 2012).................................................11

*Bluestar Genomics v. Song*,
  2024 WL 54701, at *9 (N.D. Cal. Jan. 4, 2024)..............................................10

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*,
  622 F.3d 996 (9th Cir. 2010)...........................................................................10

*City of Arcadia v. Dow Chem. Co.*,
  2021 WL 3207956 (C.D. Cal. June 9, 2021) .....................................................5

*Clark v. Advanceme, Inc.*,
  2009 WL 10672598 (C.D. Cal. 2009)................................................................11

*Clevenger v. Riviana Foods, Inc.*,
  2020 WL 2527948 (C.D. Cal. Apr. 7, 2020) ......................................................5

*Cobbledick v. U.S.*,
  309 U.S. 323 (1940) ...........................................................................................1

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010)....................................................................passim

*Couch v. Telescope, Inc.*,
  2008 WL 11363646 (C.D. Cal. Mar. 26, 2008).................................................19

*Czuchaj v. Conair Corp.*,
  2014 WL 1664235 (S.D. Cal. Apr. 18 2014) ......................................................9

*Deutsche Bank Nat. Trust Co. v. F.D.I.C.*,
  854 F. Supp. 2d 756 (C.D. Cal. 2011) .............................................................20

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020)..........................................................................17

*Dukes v. Wal-Mart Stores, Inc.*,
  2012 WL 6115536 (N.D. Cal. Dec. 10, 2012) ....................................................6

*EB Holdings II, Inc. v. Illinois Nat'l Ins. Co.*,
  108 F.4th 1211 (9th Cir. 2024) ..........................................................................7

*Flintkote Co. v. Avila PLC,*
    177 F. Supp. 3d 1165 (N.D. Cal. 2016) ...................................................... 8

*Gonzalez v. San Francisco Hilton, Inc.,*
    2023 WL 8438574 (N.D. Cal. Dec. 5, 2023) ............................................ 5

*Govea v. Gruma Corp.,*
    2021 WL 6618539 (C.D. Cal. Oct. 14, 2021) .......................................... 6

*Hamby v. Ohio Nat. Life Assur. Corp.,*
    2012 WL 2568149 (D. Haw. June 29, 2012) ............................................ 9

*Hoffman v. Citibank (S. Dakota), N.A.,*
    546 F.3d 1078 (9th Cir. 2008) ................................................................. 8

*In re Cement Antitrust Litig.,*
    673 F.2d 1020 (9th Cir. 1981) .......................................................... 1, 5

*In re Flor,*
    79 F.3d 281 (2d Cir. 1996) .......................................................... 6, 18

*John v. United States,*
    247 F.3d 1032 (9th Cir. 2001) ................................................................. 6

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.,*
    233 F. Supp. 2d 16 (D.D.C. 2002) .......................................................... 19

*Loeffler v. Target Corp.,*
    58 Cal. 4th 1081 (2014) .......................................................... 17

*Manes v. City of Santa Ana,*
    2023 WL 8115865 (C.D. Cal. 2023) ...................................................... 21

*McGill v. Citibank, N.A.,*
    2 Cal. 5th 945 (Cal. 2017) .......................................................... 13

*Moebius v. HB USA Holdings, Inc.,*
    2021 WL 9747608 (C.D. Cal. Sept. 3, 2021) ...................................... 6, 8

*Mothershead v. Wofford,*
    2022 WL 2755929 (W.D. Wash. July 14, 2002) ...................................... 18

*Nat'l Glass, Inc. v. J.C. Penney Props., Inc.,*
    650 A.2d 246 (Md. App. Ct. 1994) .......................................................... 10

*Nats. v. Securenet, LLC,*
    2010 WL 11598030 (C.D. Cal. May 25, 2010) ...................................... 12

*Ordaz Gonzalez v. Cty. of Fresno,*
    2020 WL 3412731 (E.D. Cal. June 22, 2020) ...................................... 13, 18

*Reese v. BP Expl. (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) .......................................................... 10, 20

*Ribbens Int'l., S.A. de C.V. v. Transport Int'l. Pool, Inc.*,
  47 F. Supp. 2d 1117 (C.D. Cal. 1999) ................................................................ 11

*Rieve v. Coventry Health Care, Inc.*,
  870 F. Supp. 2d 856 (C.D. Cal. 2012) ........................................................ 12, 20

*Rodriguez v. Sony Computer Entm't Am., LLC*,
  801 F.3d 1045 (9th Cir. 2015) ........................................................................ 16

*Ruiz v. Affinity Logistics Corp.*,
  667 F.3d 1318 (9th Cir. 2012) ........................................................................ 11

*Shannon-Vail Five, Inc. v. Bunch*,
  270 F.3d 1207 (9th Cir. 2001) .................................................................... 7, 16

*Shiguago v. Occidental Petroleum Corp.*,
  2009 WL 1067234 (C.D. Cal. Nov. 23, 2009) ................................................ 14

*Smith v. Gonzales*,
  2020 WL 4818716 (E.D. Cal. Aug. 19, 2020) .................................................. 6

*Starr Indem. & Liab. Co. v. Rolls-Royce*,
  725 Fed. Appx. 592 (9th Cir. 2018) .................................................................. 9

*Strauss v. Sheffield Ins. Corp.*,
  2006 WL 6158770 (S.D. Cal. June 23, 2006) ................................................ 12

*Swint v. Chambers Cty. Comm'n*,
  514 U.S. 35 (1995) ............................................................................................ 5

*Turner v. Porsche Cars N. Am., Inc.*,
  2024 WL 3533834 (C.D. Cal. June 19, 2024) ................................................ 16

*Union County, Iowa v. Piper Jaffray & Co., Inc.*,
  525 F.3d 643 (8th Cir. 2008) ...................................................................... 6, 18

*United States v. Tenet Healthcare Corp.*,
  2004 WL 3030121 (C.D. Cal. Dec. 27, 2004) .................................................. 5

*United States v. Woods*,
  571 U.S. 31 (2013) .......................................................................................... 19

*Vrugtman v. It's Just Lunch Int'l LLC*,
  2021 WL 4979443 (C.D. Cal. Sept. 24, 2021) ................................................ 11

*Walter v. Hughes Commc'ns, Inc.*,
  682 F. Supp.2d 1031 (N.D. Cal. 2010) ................................................ 10, 11, 12

*Williams v. Alameda Cty.*,
  657 F. Supp. 3d 1250 (N.D. Cal. 2023) ........................................................ 5, 6

**Statutes**

12 U.S.C. § 5801 .................................................................................................... 3

28 U.S.C. § 1291 ................................................................................................ 5

28 U.S.C. § 1292(b) .................................................................................... 1, 5, 7

28 U.S.C. § 1391 .............................................................................................. 15

Restatement (Second) of Conflict of Laws § 187(2)(b) (1971) ...................... 10

**Rules**

3 Fed. Proc., Lawyers' Ed. § 3:212 (2010) ..................................................... 12

Wright & Miller, 16 Fed. Prac. & Proc. § 3930 .............................................. 6

**Docketed**

*Reese v. Browne*,
   No. 2:08-cv-01008 (W.D. Wash. Oct. 06, 2008) ....................................... 20

*Starr Indem. & Liab. v. Rolls-Royce*,
   No. 16-17291 (9th Cir. July 17, 2017) ................................................. 9, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Robert Verthelyi submits this memorandum in opposition to Defendants' motion to certify for interlocutory appeal the Court's Order dated February 26, 2025, denying Defendants' Motions to Dismiss (ECF 52), pursuant to 28 U.S.C. § 1292(b) and to stay proceedings pending appeal filed by PennyMac Mortgage Investment Trust and PNMAC Capital Management, LLC (collectively, "PennyMac" or "Defendants") (ECF 53) ("Motion" or "Mtn.").

## I.    **INTRODUCTION**

The efficient administration of appellate justice ordinarily requires finality. *See Cobbledick v. U.S.*, 309 U.S. 323, 324-25 (1940). An interlocutory appeal is a significant departure from the norm reserved only for the most "exceptional situations." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). Yet, Defendants seek the extraordinary relief of interlocutory appeal based on nothing but their disagreement with the Court's determinations that: (1) California law applies despite the Maryland choice-of-law provision in the Declaration of Trust and (2) Plaintiff adequately alleged UCL claims under the *unlawful* and *unfairness* prongs. Defendants fall far short of meeting their high burden of demonstrating that (i) a controlling question of *pure* law exists, (ii) upon which there is a substantial ground for difference of opinion, and (iii) early appellate review would resolve the litigation. 28 U.S.C. § 1292(b); *Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir. 2010).

First, Defendants do not challenge the Court's use of California's test for determining which choice of law applies. Mtn. at 3-4. Instead, Defendants either raise entirely *new* arguments at this late stage, or they seek to challenge determinations based on mixed questions of law and fact. For example, the Court assessed the allegations in the Complaint and the existing fact record in determining that California has a materially greater interest than Maryland. Order at 10-13. Defendants ignore the factual determinations and raise new legal arguments not

previously considered by the Court in their attempt to raise pure legal questions. Defendants waived their new arguments, but even if the Court were to consider these arguments, they would fail. Furthermore, Defendants failed to demonstrate that a substantial ground for a difference of opinion exists with respect to the Court's choice of law determination. Defendants do not cite to a single relevant case to support their contention that the Court's choice of law determination is proper for interlocutory appeal. Nor would an interlocutory appeal expedite resolution of this action, as this matter could proceed here even if Maryland law applied.

Second, Defendants seek an early challenge of this Court's determination that Plaintiff had adequately alleged violations of California's Unfair Competition Law (the "UCL"), under both the *unlawful* and *unfairness* prongs. As with the choice of law determination, this issue involved mixed questions of law and fact. The Court interpreted the LIBOR Act within the context of PennyMac's Articles which the Court judicially noticed at Defendants' request. Thus, the Court's determinations of UCL violations also does not present a controlling question of law. Defendants also fail to demonstrate a substantial ground for differing opinion, other than their own self-interested reading of the LIBOR Act. Finally, even if Defendants are found to have complied with the LIBOR Act, which is not the case, that would not terminate this litigation because they may still be deemed liable under the UCL's unfairness prong.

Because Defendants cannot meet the high burden necessary for the extraordinary relief sought, the Court should deny the Motion. Likewise, the Court should deny Defendants' request to stay these proceedings because regardless of which state's law applies or how the LIBOR Act is interpreted, this case will move forward, and no efficiencies will be gained through the delay.

## II.   **BACKGROUND**

On June 14, 2024, Plaintiff initiated this class action alleging that Defendants' adoption of a fixed dividend rate in perpetuity on its fixed-to-floating Series A and Series B Preferred Shares (the "Preferred Shares") in violation of the Adjustable Interest Rate (LIBOR) Act (the "LIBOR Act"), 12 U.S.C. § 5801, et seq. is both unlawful and unfair under the UCL. Compl. ¶¶ 1-21. The LIBOR Act requires that "tough legacy contracts" (LIBOR contracts that do not provide adequate fallback provisions providing a clearly defined or practicable "replacement benchmark" following the cessation of LIBOR) shall use the Federal-Reserve-Board-selected LIBOR replacement benchmark, the Secured Overnight Financing Rate ("SOFR"), as the benchmark replacement. Here, the Articles Supplementary governing the Preferred Shares (the "Articles") are not permanent fixed-rate contracts and do not provide a benchmark replacement, nor could a fixed rate be such a benchmark or benchmark replacement. Nonetheless, PennyMac adopted a legacy fixed rate instead of SOFR (which would have resulted in significantly higher interest rate), in violation of the LIBOR Act.

On August 20, 2024, Defendants moved to dismiss the Complaint on two grounds.[1] First, Defendants argued that a Maryland choice-of-law provision governed the claims, thus prohibiting Plaintiff's claim under the UCL. MTD at 8-10. Second, Defendants argued that their use of a fixed rate did not violate the LIBOR Act. *Id.* 10-21. Thereafter, Plaintiff opposed the motions, and after the motions were fully briefed, the Court held a hearing on the motions.

Subsequently, on February 26, 2025, this Court issued an order denying Defendants' motions on both grounds (the "Order"). In a thorough, detailed opinion, the Court conducted a conflict of laws analysis under California's choice-

---

[1] Defendant PNMAC does not seek certification of this Court's denial of its motion to dismiss. Order 19-20.

of-law rules to determine whether the Maryland choice-of-law provision was enforceable. Order at 10-13. The Court's analysis determined that California has a materially greater interest in protecting consumers through its statutory scheme, which permits injured consumers not only to bring class actions to recover their losses but also to seek injunctive relief to deter and prevent future harm to other consumers located in the state, such that its law applies in this litigation. Order at 12-13. The Court also concluded that California has a greater interest in offering protections to both in-state and out-of-state investors who both contract with California-based companies and expect such California companies to act in a manner consistent with Congressional policy goals. *Id.* at 13.

After determining that California law applied, the Court turned to the question of whether Defendants' conduct violated the LIBOR Act. Order at 14-17. The Court first determined that the LIBOR Act's definition of "benchmark replacement" was ambiguous. Order at 15-16. After determining that the statutory language was ambiguous, the Court determined that Defendants' proffered interpretation conflicted with the legislative purpose driving the LIBOR Act. Order at 16. The Court found that Plaintiff sufficiently alleged that the parties did not agree to a fixed-rate instrument and "allowing PennyMac to issue dividends according to its interpretation would not support the Act's apparent goal of leaving intact 'the contractual terms the parties had agreed to'" and that Plaintiff has sufficiently alleged that Defendants "violated the LIBOR Act when it issued dividends at a fixed rate." Order at 17. The Court found that Plaintiff has sufficiently stated claims against Defendants under both the *unlawful* and *unfair* prongs of the UCL, which Defendants do not seek to appeal. On March 25, 2025, Defendants filed the current Motion seeking to certify the Court's Order for interlocutory appeal.

### III.   <u>LEGAL STANDARD</u>

The final judgment rule restricts the courts of appeal to only "appeals from final decisions of the district courts of the United States." 28 U.S.C. § 1291; *Couch*, 611 F.3d at 632. Congress has created a very narrow exception to the final judgment rule under 28 U.S.C. § 1292(b) to allow the courts of appeals to hear interlocutory appeals "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Cement,* 673 F.2d at 1026.

"The party seeking certification of an interlocutory order has the burden of establishing the existence of such exceptional circumstances." *Gonzalez v. San Francisco Hilton, Inc.*, 2023 WL 8438574, at *1 (N.D. Cal. Dec. 5, 2023). The moving party bears the high burden of demonstrating that (i) there is a controlling question of law, (ii) on which there is substantial ground for a difference of opinion, and (iii) resolving the question will materially advance the ultimate termination of the litigation. *City of Arcadia v. Dow Chem. Co.,* 2021 WL 3207956, at *1 (C.D. Cal. June 9, 2021) (Fitzgerald, J.); 28 U.S.C. § 1292(b). Furthermore, even where each requirement is met, certification is entirely within the district court's discretion. *See Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995); *United States v. Tenet Healthcare Corp.,* 2004 WL 3030121, at *1 (C.D. Cal. Dec. 27, 2004).

The first prong requires that the question be both "controlling" and "of law." A controlling question is one in which "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. If resolving the question on appeal would merely advance judicial economy, then the question is not controlling. *Williams v. Alameda Cty.*, 657 F. Supp. 3d 1250, 1254 (N.D. Cal. 2023). For the purposes of interlocutory appeal, a question of law must be one of "pure law." *Clevenger v. Riviana Foods, Inc.*, 2020 WL 2527948, at *3 (C.D. Cal. Apr. 7, 2020); *Smith v. Gonzales*,

2020 WL 4818716, at *2 (E.D. Cal. Aug. 19, 2020) (collecting cases). A pure question of law is one that the Court of Appeals can "decide quickly and cleanly without having to study the record." *Moebius v. HB USA Holdings, Inc.*, 2021 WL 9747608, at *2 (C.D. Cal. Sept. 3, 2021) (quoting *Arenholz v. Bd. of Trs.*, 219 F.3d 674, 677 (7th Cir. 2000)). If the question requires the application of a legal standard to the facts of a case, then it is not a question of pure law that may be certified for interlocutory appeal. *Williams*, 657 F. Supp. 3d at 1254.

As to the second prong, the moving party must demonstrate that there are substantial grounds for a difference of opinion. *Couch*, 611 F.3d at 633. There must be "a sufficient number of conflicting and contradictory opinions." *Id.* at 633-34, (quoting *Union County, Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008)). The moving party cannot show that there are substantial grounds for a difference of opinion by merely relying on the issue being a matter of first impression. *Id.* at 634 (citing *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

Finally, the moving party must show that immediate resolution of the issue will materially advance termination of the litigation and "minimiz[e] the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10, 2012) (quoting Wright & Miller, 16 Fed. Prac. & Proc. § 3930). *See also Govea v. Gruma Corp.*, 2021 WL 6618539, at *2 (C.D. Cal. Oct. 14, 2021) (Fitzgerald, J.) ("The purpose of an interlocutory appeal is to . . . 'save the courts and the litigants unnecessary trouble and expense.'") (quoting *John v. United States*, 247 F.3d 1032, 1051 (9th Cir. 2001) (en banc) (Rymer, J., special concurrence)).

IV. **ARGUMENT**

 A. **Application of California's Choice of Law Rule Cannot be Certified for Interlocutory Appeal.**

  Defendants fail to meet their burden under Section 1292(b) on the issue of whether the Court's application of California's choice-of-law rule to the allegations in Plaintiff's allegations and the existing fact record can be certified for interlocutory appeal.

  1. **Defendants have not raised a controlling question of law.**

  A choice-of-law analysis that requires factual findings and the application of law to the facts, is not a "pure legal" question reviewed *de novo* as Defendants suggest. Mtn. at 5:8-19. Defendants quote *EB Holdings II, Inc. v. Illinois Nat'l Ins. Co.*, 108 F.4th 1211, 1218 (9th Cir. 2024), "[w]e review choice-of-law questions de novo," Mtn. at 6, but omit the entire standard, which is—"[w]e review choice-of-law questions de novo, but review underlying factual findings for clear error." 108 F.4th at 1218. *EB Holdings* is also inapposite because it involved an appeal of a choice-of-law determination *after a final judgment was rendered*, and not an interlocutory appeal. *Id*. at 1218. Ninth Circuit law is clear—a court's determination of which state's choice-of-law rules apply is a question of pure law, but its *application* is a mixed question of law and fact that on traditional appeal is reviewed for clear abuse of discretion. *Shannon-Vail Five, Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001) ("We must select the correct choice-of-law rule, a pure legal question, and then apply that rule to the facts of the case, a mixed question of law and fact.").

  Defendants do not dispute the Court's application of California choice-of-law rules, or the Court's finding that the Maryland choice-of-law provision in the Declaration of Trust applied. Moreover, Defendants do not even dispute the Court's application of California's two-prong test for determining whether a choice-of-law

clause is enforceable. Defendants simply dispute application of that test to the record before it when it determined Maryland law is contrary to a fundamental policy of California and California has a materially greater interest. Order at 10-13.

In reaching these determinations, the Court analyzed the specific claim alleged in the Complaint, the allegations in the Complaint, and the legal and factual record before it, including for example Defendants' residency and the parties differing factual arguments regarding where the alleged misconduct took place. Order at 11. The Court properly held that California has a fundamental policy of providing a private right to injunctive relief, which would have been unavailable under Maryland's Consumer Protection Act. Order at 11-12. Finally, the Court scrutinized multiple competing state interests, including California's interest in protecting its in-state investors; California's interest in regulating California-based businesses; Maryland's interest in regulating businesses incorporated there; and Maryland's interest in enforcing contracts created pursuant to its laws. *Id.* at 13. These are not questions of pure law but rather a determination of fact, weighing all the competing interests and studying the legal and fact record presented. *Moebius*, 2021 WL 9747608, at *2 (C.D. Cal. Sept. 3, 2021).

Courts do not certify for interlocutory appeal choice-of-law determinations that involve mixed questions of law and fact. None of the cases cited by Defendants hold otherwise. For example, the choice-of-law determination in *Flintkote Co. v. Avila PLC,* 177 F. Supp. 3d 1165, 1172 (N.D. Cal. 2016), was not a pure legal question (nor did it concern a motion to certify a choice-of-law issue for interlocutory appeal). *Flintkote* involved a summary judgment motion where the court weighed the impact of a bankruptcy, numerous agreements, and facts underlying the choice of law dispute, which does not comprise a pure legal question. Defendants also cite to *Hoffman v. Citibank (S. Dakota), N.A.,* 546 F.3d 1078 (9th Cir. 2008) and *Starr Indem. & Liab. Co. v. Rolls-Royce*, 725 Fed. Appx. 592 (9th

Cir. 2018), but *Hoffman* involved the court's failure to conduct ***any*** choice of law analysis, 546 F.3d at 1082, while *Starr* is inapposite because the certification motion was ***unopposed***, the facts were undisputed, and involved the pure legal issue of whether the correct test had been applied. *Rolls-Royce Corporation's <u>Unopposed Motion For Certification of March 25, 2016 (Dkt. 66) and May 25, 2016 (Dkt. 69) Orders For Immediate Appeal To The Ninth Circuit Court Of Appeals by Rolls-Royce Corporation</u>*, No. 14-CV-02100 (D. Ariz. June 29, 2016), ECF No. 70; Br. of Defendant Appellants at 3, *Starr Indem. & Liab. v. Rolls-Royce*, No. 16-17291 (9th Cir. July 17, 2017), ECF No. 9 (July 17, 2017).

Defendants, at Mtn. 5-6, assert that the choice of law determinations made in this action are "controlling" legal questions because courts in other cases have dismissed UCL claims upon a finding that a different state's law applies. For example, in *Hamby v. Ohio Nat. Life Assur. Corp.*, 2012 WL 2568149 (D. Haw. June 29, 2012), the court (applying Hawaii law) held that it could determine the applicable choice of law on a motion to dismiss where the pleadings contained all necessary facts needed to decide that issue.

Here, Plaintiff's allegations support application of California law, not Maryland law, and Plaintiff strongly opposed application of the Declaration of Trust's choice of law provision. The parties raised, and the Court decided, a series of mixed legal and factual disputes regarding fundamental California policy and states' interests. As set forth in *Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18 2014)—a case cited by Defendants—sometimes choice of law requires a careful analysis of the different bodies of law or interests of the different states, and cannot be determined without a factual record. Here, the Court made its determinations based on a robust factual and legal from which it engaged in a careful analysis of the facts and law and determined California law applied. *See, e.g.,* Order 4-6. In other words, the decision to dismiss the UCL claim was not a

controlling legal question based on the pleadings, but a far more complex and mixed question of law and fact. That some cases are less complex when it comes to a choice of law determination and may be reduced to a controlling pure legal question, is of no moment and contrary to what took place here.

### 2. There is no substantial ground for difference of opinion.

Defendants fail to show a substantial ground for difference of opinion.

Defendants misstate the standard for "substantial ground for difference of option" by claiming they need only show "reasonable jurists **might** disagree on an issue's resolution." Mtn. at 6 (relying on *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). But the Ninth Circuit in *Reese* was discussing a matter of first impression, *id.*; here Defendants set forth no indication of any contrary positions outside of their own self-serving argument.

The *Reese* standard does not apply here because California's choice-of-law rule and the reasoning in *Walter* are not novel. *Bluestar Genomics v.* Song, 2024 WL 54701, at *9 (N.D. Cal. Jan. 4, 2024) (rejecting *Reese* standard in a case that did not present "novel issues"). They stem from the Restatement (Second) of Conflict of Laws § 187(2)(b) (1971), published over 50 years ago. Section 187(2)(b) has been adopted by many states, including Maryland. *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 650 A.2d 246, 248 (Md. App. Ct. 1994) (reversing dismissal of contract dispute because parties' contractual choice of Pennsylvania law was contrary to fundamental Maryland policy and Maryland had a materially greater interest in the contract to be performed in Maryland).

Courts routinely engage in choice of law analyses and multiple courts have held that California's interest in enforcing the UCL is substantially greater than another state's interest in enforcing a contractual choice-of-law provision. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1003-4 (9th Cir. 2010) (California law applied to validity of arbitration clause even though the

franchise agreement adopted Texas law and was formed in Texas, the franchise was based in Texas, royalties and franchise fees were received in Texas, and franchisees trained in Texas, because California has a substantial, case-specific interest in protecting franchisees from losing statutory protections); *Ruiz v. Affinity Logistics Corp.,* 667 F.3d 1318, 1323 (9th Cir. 2012) (reversing dismissal of employment action were application of contractual choice of law violated fundamental policy of ensuring worker protections); *Vrugtman v. It's Just Lunch Int'l LLC*, 2021 WL 4979443 (C.D. Cal. Sept. 24, 2021) (contractual choice of Pennsylvania law not applicable to UCL claim); *Bermudez v. PrimeLending*, 2012 WL 12893080 (C.D. Cal. Aug. 14, 2012) (contractual choice of Texas law not applicable to UCL claim); *Clark v. Advanceme, Inc.*, 2009 WL 10672598 (C.D. Cal. 2009) (contractual choice of New York law not applicable to UCL claim); *Clark v. Advanceme, Inc.*, 2009 WL 10672598 (C.D. Cal. 2009) (contractual choice of New York law not applicable to UCL claim); *Ribbens Int'l., S.A. de C.V. v. Transport Int'l. Pool, Inc.*, 47 F. Supp. 2d 1117, 1123 (C.D. Cal. 1999) (contractual choice of Pennsylvania law not applicable to UCL claim).

Defendants' assert that reasonable jurists could disagree with the reasoning in *Walter v. Hughes Commc'ns*, *Inc.,* 682 F. Supp.2d 1031, 1042 (N.D. Cal. 2010)), because the existence of different remedies is not *itself* a fundamental conflict. But the Court did not rest its decision on the fact that the states have differing remedies (i.e., a *per se* conflict because there are different remedies available). Rather, the Court went a step further in finding that the specific difference in remedies between the UCL (which provides for public injunctive relief) and MCPA (which is restricted to monetary relief) violate California's strong fundamental policy of deterring unfair practices and protecting consumers. Order at 12 (relying on *Walter,* 682 F. Supp.2d at 1042 (N.D. Cal. 2010)). [J]ust because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial

difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633 (quoting 3 Fed. Proc., Lawyers' Ed. § 3:212 (2010)). Moreover, established principles of law, such as the application of California's choice-of-law analysis, often leads to differing results. *See Couch*, 611 F.3d at 633 ("that settled law might be applied differently does not establish a substantial ground for difference of opinion."). Contrary to Defendants' contention, the court in *Irwin Nats. v. Securenet, LLC*, did not "reject[] *Walter's* approach . . .", Mtn. at 9; it declined to address *Walter* because the plaintiffs lacked standing for injunctive relief. 2010 WL 11598030, at *2 (C.D. Cal. May 25, 2010).

In addition, Defendants argue that investors are unlike other types of consumers, and thus reasonable jurists could differ on whether *Walter* applies. However, Defendants offer no support for their contentions by pointing to specific language in *Walter,* cases adopting *Walter's* reasoning, the UCL, or Section 187(2)(b) of the Restatement—none of which differentiated between investors and consumers.

Certification requires more than disagreement with a Court's conclusion. "[I]f district courts certified an order for appeal in every instance in which a party disagreed with a court's opinion, the 'exceptional circumstances' requirement for interlocutory appeals would be rendered meaningless. . . ." *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) (quoting *Strauss v. Sheffield Ins. Corp.*, 2006 WL 6158770, at *4 (S.D. Cal. June 23, 2006)). "The fact that Defendants are not satisfied by that analysis is not a strong enough argument to create the exceptional circumstances required for interlocutory appeal." *Id.* Yet, Defendants' arguments boil down to no more than a disagreement with the Court's conclusion that California has a more substantial interest than Maryland in the litigation and its law should apply.

Defendants also assert for the first time that Maryland law provides grounds for equitable relief and thus there is no conflict with a fundamental California policy. Mtn. at 7-11. A court is not required to *sua sponte* survey all the laws of Maryland (including laws of claims not asserted), to determine whether a fundamental conflict of law exists between the actual claim asserted and the laws of the states involved. Defendants also had every opportunity to assert the reasons they contend that Maryland law more broadly does not fundamentally conflict with California law in the context of the UCL claim and alleged violation of federal law, but failed to do so. This argument is therefore waived. *See Avon Ins., PLC v. Lubinski*, 1993 WL 300557, at *2 (N.D. Cal. July 22, 1993) ("If a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived."). "A motion for certification is not an opportunity for Plaintiff to debate the merits of the underling motion . . . or to present arguments that could have been, but were not, previously raised." *Ordaz Gonzalez v. Cty. of Fresno*, 2020 WL 3412731, at *5 (E.D. Cal. June 22, 2020).

Next, Defendants assert that the relief sought does not amount to "public relief," pursuant to the definition in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (Cal. 2017). Mtn. 8 n.2. But in *McGill,* the California Supreme Court held that an arbitration provision in a private contract for a credit card between a consumer and an issuer was contrary to UCL public policy in favor of public injunctive relief. 2 Cal. 5th at 961 ("[P]ublic injunctive relief remains a remedy available to private plaintiffs under the UCL and the false advertising law…."). Not every California citizen was a consumer of the credit card at issue in *Citibank*. Thus, the fact that the injunctive relief applies to PennyMac investors does not negate that the injunction requested constitutes public relief under the UCL.

Defendants appear to be asserting that they should not be held liable for their unlawful and unfair conduct under consumer protections laws, but rather the limits

of their liability should be contractual. But this case is about PennyMac's violation of the LIBOR Act and the UCL and the public injunctive relief needed to ensure PennyMac pays a floating rate to all current *and future shareholders*. Only existing shareholders have standing to bring a contract action (under Maryland and California law). An injunction requiring PennyMac to adopt SOFR will ensure California companies' compliance with the LIBOR Act and deter others from violating this law, whereas a specific performance action under Maryland law will not accomplish these fundamental policies of California. This UCL action (versus a Maryland contract action) will also alleviate PennyMac's disruption to the retail market for preferred stock caused by its violation. That a "vast body" of Maryland law exists, Mtn. at 7-8, fails to account for the *actual* claim asserted in this case and the *actual* relief sought. This case is not primarily about the "payment of money" and Defendants' refusal to accept what this case is about, and the relief sought, does not create a substantial ground for difference of opinion.

### 3. Certification will not materially advance the resolution of this litigation.

Defendants also cannot establish that interlocutory appeal is likely to materially advance the resolution of this litigation. Defendants' argument is premised entirely on the unsubstantiated assumption that, if Maryland law applies, Plaintiff's case will be dismissed with prejudice. Mtn. at 11 (citing *Shiguago v. Occidental Petroleum Corp.*, 2009 WL 1067234, at *1 (C.D. Cal. Nov. 23, 2009)). The record demonstrates this is not the case.

At the hearing on Defendants' Motions to Dismiss, the Court asked Defendants' counsel what would happen if the Court held that Maryland law applied and granted leave to amend the Complaint. (Tr. 7:10-18). Defendants' only response was that there was "no basis to keep this case here in California" and they "would probably…move for transfer…." (Tr. 7:19 – 8:8). Thus, Defendants

concede that litigation will continue even if Maryland law applies and may require additional resolution of a motion to transfer.[2] The Court could also grant Plaintiff leave to amend his Complaint and proceed in this Court, even if Maryland law were to apply. Thus, in addition to the lengthy time required to resolve an interlocutory appeal,[3] time will be spent on a motion to transfer venue, amendments to the pleadings, and another round of motions to dismiss. As such, an interlocutory appeal will cause inordinate delay without the benefit of a materially advanced resolution.

### B. The Court's Determination that PennyMac's Use of the Fixed-Rate in Issuing the Dividends Violates the LIBOR Act Cannot be Certified for Interlocutory Appeal.

Defendants fail to meet their burden to certify the Court's determination that PennyMac's use of the fixed rate violates the LIBOR Act. Mtn. at 1, 11-12.

### 1. Defendants have not raised a controlling question of law.

Whether the Articles (which Defendants asked to have judicially noticed) contain an adequate benchmark replacement rate is necessarily a mixed issued of fact and law. The Court was required as part of its analysis to determine not only the meaning of the statute, but also whether the specific fallback provisions applicable in this case conformed with the statute. Order at 17. Even if the interpretation of the statute itself is a pure question of law, the application of the

---

[2] Defendants' contention that there would be no basis to keep the case in California is wrong as a matter of law. Defendants maintain their principal places of business in Los Angeles County, California and as such this is general jurisdiction here, Complaint ¶¶ 28-29 and the Central District of California is a proper venue. 28 U.S.C. § 1391. If neither were the case, Defendants could have sought to dismiss this action for lack of jurisdiction and improper venue under Rule 12(b)(1)-(3).

[3] For reference, in *Starr Indem. & Liab. Co*., the ***unopposed*** motion to certify the choice of law question for interlocutory appeal was filed on June 29, 2016. No. 4:14-cv-02100 (D. Ariz.), ECF No. 70. The Ninth Circuit did not issue its ruling on the appeal until nearly two years later on June 5, 2018. 725 Fed. Appx. 592.

facts of a case to a rule of law is a mixed issue of law and fact. *Shannon-Vail*, 270 F.3d at 1210.

Moreover, whether the use of the fixed-rate violates the LIBOR Act is not a controlling question of law in this litigation as Defendants can be held liable under the UCL *even if* the Ninth Circuit determines that the fixed-rate is a "benchmark replacement" that complies with the LIBOR Act. Thus, whether the use of a fixed rate violates the LIBOR Act is not a controlling question of law.

The Court determined that Defendants' reading of the statute does "not comport with either the ***purpose or overall structure*** of the LIBOR Act" and instead "would result in enforcement of the exact type of conduct Congress sought to reform." Order at 16; *see Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015). Even if Defendants' definition is accepted, the Court not only held that the conduct violated the UCL as unlawful, but the Court also held that the conduct violated the UCL as unfair. Order at 19. The UCL establishes "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Order at 13. Plaintiff's Complaint articulates that Defendants' liability under the UCL in this action can be both unlawful and unfair. Compl. ¶¶ 73-79 (unlawful); ¶¶ 80-82 (unfair). Each of these are separate theories of liability that the Court separately analyzed and found the conduct violated both prongs. Order at 14-17 (unlawful); at 18-19 (unfair).

The *unfairness* prong of the UCL can be satisfied by three separate tests: (1) the tethering test; (2) the balancing test, whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers or (3) the FTC test, whether the practice's impact on the victim outweighs the reasons, justifications, and motives of the alleged wrongdoer. *Turner v. Porsche Cars N. Am., Inc.*, 2024 WL 3533834, at *4 (C.D. Cal. June 19, 2024) (Fitzgerald, J.); *see also* Order at 18, *citing Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir.

2020). The Court found that the *unfairness* prong was met based on the first test, holding that the conduct was "sufficiently tethered to a policy goal for which Congress enacted the LIBOR Act." Order at 18. That holding is not disrupted even if the Ninth Circuit were to find the fixed rate is a benchmark replacement. Furthermore, while Plaintiff asserts that all three tests were met, the Court did not reach the other two tests.

Indeed, the legislative history and policy goals of the LIBOR Act make clear that PennyMac's conduct was unethical and significantly harmful to consumers, thus satisfying the balancing test. For the same reasons, this conduct also satisfies the FTC test, as PennyMac has no policy justification that outweighs the significant harm here.

Defendants wrongly assert that the Plaintiff cannot bring a claim under UCL's "*unfairness*" prong because of federal preemption and the UCL's safe harbor. Mtn. at 14-15. Plaintiff opposed these arguments already, Opp. at 14-17, but the Court never reached the question because the Court had already held that Defendants' conduct was **unlawful** under the statute. Order at 17-18. Whether Plaintiff's claim for **unfair** conduct falls into the UCL safe harbor was not decided. Defendants cannot assume that they win on the merits of this question simply because they say so. "To forestall an action under the unfair competition law, another provision must actually 'bar' the action or **clearly permit** the conduct." *See Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014) (emphasis in original) (internal quotation omitted). Defendants have proffered no support for the contention that the LIBOR Act clearly permits their conduct. In any event, Defendants do not seek to certify questions regarding federal preemption or whether the UCL safe harbor would apply in this litigation.

For these reasons, the question presented by Defendants is not a controlling, pure question of law.

### 2. Defendants cannot demonstrate that there are substantial grounds for difference of opinion.

Defendants do not challenge the Court's determination that a public policy consideration of the LIBOR Act is the protection for floating-rate instruments from becoming fixed-rate instruments, and only seek to certify the Court's rejection of their reading of the statute. Defendants again fail to demonstrate that there are substantial grounds for a difference of opinion and merely improperly debate the merits of the underling motion. *Ordaz Gonzalez,* 2020 WL 3412731, at *5.

Rather than stand on their assertion that "[o]ne of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed," Mtn. at 10, n.3, Defendants now attempt to convince the court that the complete lack of case law clearly establishes the substantial ground, Mtn. at 15, *quoting Mothershead v. Wofford*, 2022 WL 2755929, at *2 (W.D. Wash. July 14, 2002). Defendants' arguments are unpersuasive.

Defendants cannot rely on the fact that a case presents a matter of first impression to establish that a substantial difference of opinion exists. *Couch*, 611 F.3d 629 (9th Cir. 2010) ("[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."), *quoting In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996); *see also Union County, Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643 (8th Cir. 2008) ("[A] dearth of cases does not constitute substantial ground for difference of opinion.") (internal quotation omitted). While Defendants are not required to wait for adverse authority to certify interlocutory appeal, they also cannot point to a vacuum. *See Couch*, 611 F.3d at 633 ("[J]ust because a court is the first to rule on a particular question … does not mean there is such a substantial difference as to warrant interlocutory appeal."). Their sole basis for this difference

of opinion cannot be Defendants' self-interested differing opinion. *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 31 (D.D.C. 2002) ("[D]efendants' conviction of the correctness of their position is insufficient to carry them over the high threshold posed by the standard governing certification for interlocutory appeal."). The moving party must point to some persuasive authority that would justify a difference of opinion, regardless of whether the issue is novel. *See Couch v. Telescope, Inc.*, 2008 WL 11363646, at *4 (C.D. Cal. Mar. 26, 2008) ("Defendants have not identified any legal authority discussing the [g]ame at issue that disagrees with the Court's decision.").[4] Defendants have failed to do so.

Instead, Defendants assert that the statute is unambiguous and thus, Plaintiff offers no "compelling reasons" to conclude there was an ambiguity. Mtn. at 16. But that is not the case. Plaintiff pointed to inconsistencies in the usage of commas and the word "or" within the definition of "benchmark replacement." Opp. at 13. Plaintiff cited the House Legislative Counsel's Manual on Drafting, case law from the Eastern District of Virginia, and the Chicago Manual of Style. Opp. at 13. Rep. at 11. Nothing in Defendants' cases contravene Plaintiff's demonstration of ambiguity. Defendants again misstate the law by selectively quoting language in a case where they assert that the Supreme Court has held that the word *or* "is almost always disjunctive . . .," *and* ignoring that the Court also held that *or* "can sometimes introduce an appositive—a word or phrase that is synonymous with what precedes it . . . ." *United States v. Woods*, 571 U.S. 31, 45 (2013). Once again, Defendants' strong disagreement with the Court's determination does not warrant

---

[4] In *Couch*, the district court explicitly held that there was no substantial ground for difference of opinion, but nevertheless certified interlocutory appeal on the basis of comity. 2008 WL 11363646, at *4. The Ninth Circuit agreed with the district court's finding that no substantial ground existed and vacated the order certifying appeal as improper under § 1292. 611 F.3d at 634 (The "interests of comity is not one of our statutory bases for jurisdiction over less than final judgments.").

interlocutory review. *Rieve,* 870 F. Supp. 2d at 880 (C.D. Cal. 2012). Defendants have failed to demonstrate that the Court cannot consider basic grammar when deciding if a statute is ambiguous. Defendants do not dispute that legislative history could provide meaningful insight into the intended purpose of a statute. Nor do they provide support for their position that the intent of the LIBOR Act was to protect companies who convert floating-rate instruments into permanent fixed-rate instruments, or that the LIBOR Act would deem a fixed rate a benchmark rate.

The cases cited by Defendants cut against their argument that a vacuum of authority is sufficient to establish the requisite substantial grounds. The court in *Deutsche Bank* was not addressing a matter of first impression, but rather wrestling with the question of which of two Ninth Circuit opinions were more instructive under the unique facts of that case. *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 854 F. Supp. 2d 756, 769 (C.D. Cal. 2011) ("*McCarthy* did not clearly identify the extent to which it left *Sharpe*'s holding intact."). Similarly, in *Reese,* while there was a lack of "controlling" authority, the defendants were able to direct the court to numerous bodies of persuasive authority including treatises, academic articles, and opinions from other circuit courts. *Compare* 643 F.3d at 691-92 (relying on legal concepts articulated by the Second, Ninth, and Eleventh Circuits, the District Court for the District of Columbia, and *Williston on Contracts*) *with* Br. of Defendant-Appellant at 23, 10-35128 (9th Cir.), ECF No. 10-1 (citing same sources); *see also Reese v. Browne*, Defendants' Reply in Further Support of Their Motion to Dismiss Consolidated Amended Class Action Complaint at 7-8, No. 2:08-cv-01008 (W.D. Wash. Oct. 06, 2008), ECF No. 112 (citing case law from S.D.N.Y.). Defendants have not presented a single piece of persuasive authority to demonstrate any ground—much less a *substantial* ground— for a difference of opinion.

### 3.    Certification will not materially advance the resolution of this litigation.

Defendants claim that if the Ninth Circuit agrees with their definition of "benchmark replacement", the entire case must be dismissed. Mtn. at 17-18. But that argument ignores that the Court upheld Plaintiff's UCL *unfairness* claim. Order at 19. The Court determined that the policy goal of the LIBOR act was to "prevent floating-rate instruments from unfairly converting into fixed rate instruments." Order at 16. Defendants do not contest the Court's determination of the public policy guiding the LIBOR Act; they only challenge the Court's decision that PennyMac's use of a fixed rate violates the LIBOR Act. Mtn. at 16. Thus, certification of this issue for interlocutory appeal would not "end" the litigation as Defendants claim, Mtn. at 18.

## V.    DEFENDANTS' MOTION TO STAY SHOULD BE DENIED

In addition to seeking interlocutory review, Defendants seek a stay of proceedings at the trial level should their Motion be granted. The Court has broad discretion to decide whether a stay is appropriate. *Manes v. City of Santa Ana*, 2023 WL 8115865, at *1 (C.D. Cal. 2023). In determining whether a stay is appropriate pending interlocutory review, the Court should consider whether (1) interlocutory review would materially advance the ultimate termination of the litigation, and (2) whether a stay would promote economy of time and effort. *Am. Hotel & Lodgings Ass'n v. City of Los Angeles*, 2015 WL 10791930, at *3 (C.D. Cal. Nov. 5, 2015). For all the reasons stated above, interlocutory review will not materially advance the ultimate termination of this litigation or promote economy of time and effort.

Indeed, even if an appeal were to happen and both issues were resolved in Defendants' favor, the case would still proceed. As such, there is no reason to stay

the case and delay discovery. Staying the case would just prolong the case, which is directly at odds with judicial economy and efficiency.

Further, Plaintiff and the putative class would be materially harmed by any delay in this case's resolution. In support of their request for a stay, Defendants argue that Plaintiff will not be harmed because Plaintiff only seeks damages. Mtn. at 19, n.7. This is false. The Complaint clearly states that Plaintiff also seeks a declaration that Defendants must implement SOFR as the applicable benchmark for dividends, as well as any additional injunctive relief that the Court deems appropriate to enforce its judgment. Compl. at 23. Until Defendants adopt SOFR as the appropriate benchmark replacement for LIBOR, Plaintiff and the putative class face imminent, continuous harm.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to certify issues for interlocutory appeal and its request for a stay, should be denied in its entirety.

Dated: April 7, 2025                **BERMAN TABACCO**

                                    By:   */s/ Daniel E. Barenbaum*
                                          Daniel E. Barenbaum

                                    Nicole Lavallee
                                    425 California Street, Suite 2300
                                    San Francisco, CA 94104
                                    Telephone: (415) 433-3200
                                    Facsimile: (415) 433-6382
                                    Email:  nlavallee@bermantabacco.com
                                            dbarenbaum@bermantabacco.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Catherine Pratsinakis (*pro hac vice*)
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7013
Email:  cpratsinakis@dilworthlaw.com

*Attorneys for Plaintiff Roberto Verthelyi
and the Putative Class*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Roberto Verthelyi, certifies that this brief contains 6,943 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Daniel E. Barenbaum*
Daniel E. Barenbaum

*Attorney for Plaintiff Roberto Verthelyi and the Putative Class*