1  UMHOFER, MITCHELL & KING LLP
2  Matthew Donald Umhofer (SBN 206607)
   Jonas P. Mann (SBN 263314)
3  767 S. Alameda St., Suite 270
   Los Angeles, California 90021
4  Telephone: (213) 394-7979
   Facsimile: (213) 529-1027
5  matthew@umklaw.com
   jonas@umklaw.com
6  *Attorneys for Defendants PennyMac*
7  *Mortgage Investment Trust and PNMAC*
   *Capital Management LLC*

8  Steven M. Farina (*pro hac vice*)
9  Melissa B. Collins (*pro hac vice*)
   sfarina@wc.com
10 mcollins@wc.com
   WILLIAMS & CONNOLLY LLP
11 680 Maine Avenue, SW
   Washington, DC  20024
12 Telephone: 202-434-5000
   Facsimile: 202-434-5029

13 *Attorneys for Defendant PennyMac*
   *Mortgage Investment Trust*
14

15              **UNITED STATES DISTRICT COURT**

16             **CENTRAL DISTRICT OF CALIFORNIA**

17

18  ROBERTO VERTHELYI, on behalf        Case No. 2:24-cv-05028-MWF
    of himself and all others similarly
19  situated,                           **DEFENDANTS' REPLY IN**
                                        **SUPPORT OF THEIR MOTION**
20              Plaintiff,              **TO CERTIFY ORDER FOR**
                                        **INTERLOCUTORY APPEAL**
21       v.                             **PURSUANT TO 28 U.S.C. § 1292(b)**
                                        **AND TO STAY PROCEEDINGS**
22  PENNYMAC MORTGAGE                   **PENDING APPEAL**
    INVESTMENT TRUST; PNMAC
23  CAPITAL MANAGEMENT, LLC,            Hearing Date:  April 28, 2025
                                        Time:  10:00 a.m.
24              Defendants.             Place:  Courtroom 5A
                                        Judge: Michael W. Fitzgerald
25

26

27

28

─────────────────────────────────────────────────────────
*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER*
*FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ................................................................. 1

II.   ARGUMENT....................................................................... 2

    A.   This Court Should Certify For Immediate Appeal The Question of
        Whether Maryland Law Governs This Dispute. ........................... 2

        1.   This Issue Presents a Controlling Question of Law. ...................... 2

        2.   Substantial Grounds Exist For a Difference of Opinion. ................. 4

        3.   Permitting Immediate Appeal Would Materially Advance The
           Termination of The Litigation. ....................... 7

    B.   This Court Should Certify For Immediate Appeal The Question of
        Whether PennyMac's Fallback Dividend Rates Are Qualifying
        "Benchmark Replacements" Under The LIBOR Act. ..................... 9

        1.   This Issue Presents a Controlling Question of Law. ...................... 9

        2.   Substantial Grounds Exist For a Difference of Opinion. .............. 11

        3.   Permitting Immediate Appeal Would Materially Advance The
           Termination of The Litigation. ....................... 13

    C.   This Court Should Stay Further Litigation Pending Resolution of The
        Appeal. ....................... 14

III.  CONCLUSION ................................................................. 15

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER
FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                **PAGE(S)**

3

*Anderson v. Dassault Aviation*,
   2005 WL 8164289 (E.D. Ark. Mar. 15, 2005) ............................................4

4

*Andrade v. P.F. Chang's China Bistro, Inc.*,
   2013 WL 12315517 (S.D. Cal. Nov. 26, 2013) ........................................5

5

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
   634 F. Supp. 2d 1081 (E.D. Cal. 2008) ...................................................3

6

7

*Brack v. Omni Loan Co.*,
   164 Cal. App. 4th 1312 (2008) ................................................................3

8

*Brickman v. Facebook, Inc.*,
   2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ........................................8

9

10

*Byars v. SCME Mortg. Bankers, Inc.*,
   109 Cal. App. 4th 1134 (2003) ..............................................................11

11

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1981) .................................................................8

12

13

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) .................................................................12

14

*Dugan v. Lloyds TSB Bank, PLC*,
   2014 WL 1647691 (N.D. Cal. Apr. 24, 2014) ........................................7

15

16

*First State Ins. Co. v. XTRA Intermodal, Inc.*,
   2024 WL 2813812 (S.D. Ill. June 3, 2024) .............................................4

17

*Gustafson v. BAC Home Loans Servicing, LP*,
   294 F.R.D. 529 (C.D. Cal. 2013) ............................................................3

18

19

*Hengle v. Asner*,
   2020 WL 855970 (E.D. Va. Feb. 20, 2020) ...........................................3

20

*Hoffman v. Citibank (S. Dakota), N.A.*,
   546 F.3d 1078 (9th Cir. 2008) .................................................................4

21

22

*Hoffman v. Citibank (S. Dakota), N.A.*,
   2007 WL 5659406 (C.D. Cal. Feb. 15, 2007) .........................................4

23

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
   22 F.4th 1125 (9th Cir. 2022) ............................................................4, 12

24

25

*Impossible Foods Inc. v. Impossible X LLC*,
   80 F.4th 1079 (9th Cir. 2023) .................................................................6

26

*Irwin Naturals v. Securenet, LLC*,
   2010 WL 11598030 (C.D. Cal. May 25, 2010) ......................................6

27

28

iii

*Joffe v. Google, Inc.*,
  746 F.3d 920 (9th Cir. 2013) ................................................................. 10

*John v. United States*,
  247 F.3d 1032 (9th Cir.2001) ................................................................. 8

*Kim v. Cedar Realty Tr., Inc.*,
  116 F.4th 252 (4th Cir. 2024) ................................................................. 5

*Linkline Commc'ns, Inc. v. SBC California, Inc*.,
  2005 WL 8252959 (C.D. Cal. Apr. 1, 2005) ..................................... 5, 13

*Mehedi v. View, Inc.*,
  2024 WL 3748012 (N.D. Cal. Aug. 8, 2024) ......................................... 14

*Montich v. Miele USA, Inc*.,
  849 F. Supp. 2d 439 (D.N.J. 2012) ........................................................ 3

*Ocean S. v. Los Angeles Cnty.*,
  2024 WL 5298601 (C.D. Cal. Dec. 4, 2024) ..................................... 8, 14

*Phillips v. Amoco Trinidad Oil Co*.,
  632 F.2d 82 (9th Cir. 1980) ................................................................... 4

*Puerta v. United States*,
  121 F.3d 1338 (9th Cir. 1997) ............................................................... 6

*Reese v. BP Expl. (Alaska) Inc*.,
  643 F.3d 681 (9th Cir. 2011) ........................................................ 8, 12, 13

*Regal Stone Ltd. v. Longs Drug Stores California, L.L.C*.,
  881 F. Supp. 2d 1123 (N.D. Cal. 2012) ................................................ 13

*Reliable Tractor, Inc. v. John Deere Constr. & Forestry Co*.,
  2009 WL 10713773 (M.D. Ga. Oct. 20, 2009) ...................................... 4

*Rollins v. Dignity Health*,
  2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ....................................... 8

*In re SFPP Right-of-Way Claims*,
  2016 WL 11744979 (C.D. Cal. Dec. 5, 2016) ...................................... 14

*San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*,
  2021 WL 4988033 (C.D. Cal. June 1, 2021) ........................................ 10

*Schoenberg v. Exportadora de Sal, S.A. de C.V.*,
  930 F.2d 777 (9th Cir. 1991) ................................................................. 4

*Starr Indemnity & Liability Co. v. Rolls-Royce*,
  725 F. App'x 592 (9th Cir. 2018) .......................................................... 4

*Walter v. Hughes Communications, Inc*.,
  682 F. Supp.2d 1031 (N.D. Cal. 2010) ............................................... 6, 7

*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ............................................................. 15

iv

**STATUTES**

12 U.S.C. § 5802(3) ......................................................................................... 9

12 U.S.C. § 5803(a)(2), (f)(2) ....................................................................... 10

28 U.S.C. § 1292(b) .............................................................................. *passim*

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER
FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

## I.    __INTRODUCTION__

This case is a prime candidate for interlocutory appeal.  The Court's February 26, 2025 Order turns on two independent legal conclusions: (1) that a Maryland choice-of-law provision is unenforceable because of a conflict with a matter of fundamental California policy, and (2) that a fixed dividend rate is not a "benchmark replacement" under the LIBOR Act.  The Court has acknowledged that the first question is a "difficult" one—which Plaintiff all but ignores—and that the second is an issue of first impression with "no relevant authority" speaking to the correct interpretation.   Order 11, 16.  Resolving either of these questions in Defendants' favor would end, or at the very least fundamentally alter in nature and scope, this litigation.  It is for circumstances like these that Section 1292(b) interlocutory appeals exist.

This case in particular calls out for immediate appellate review.  It is in the shareholders', companies', and Court's best interest to reach final resolution on the meaning of the LIBOR Act as quickly and efficiently as possible.  That resolution will come from the Ninth Circuit, which will determine whether Defendants' interpretation of the statute is correct, or Plaintiff's is.  If Defendants are correct, PennyMac complies with the LIBOR Act; if Plaintiff is correct, PennyMac would need to switch to a SOFR-based rate.  Discovery will not shed any new light on this fundamental and binary issue; the terms of the LIBOR Act and the Articles Supplementary are established and will not change.  There is no reason to delay, and every reason to advance, final determination of this statutory interpretation question.

Plaintiff attempts to recast Defendants' questions for certification as fact-bound, and speculates that some potential claim may survive in a different form.  But each of Defendants' questions can be resolved on purely legal grounds, as applied to basic, undisputed facts, and a different decision on either one would result in dismissal of the only claim asserted here, under the UCL.  And Plaintiff's insistence that there cannot be substantial grounds for a difference of opinion because the Court already ruled in Plaintiff's favor misses the point of the interlocutory appeal inquiry.  The Court's

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER*
*FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

disagreement with Defendants' positions does not mean that other reasonable jurists would not find otherwise, on the issues the Court recognizes are "difficult" or lack "relevant authority." Order 11, 16.

If Defendants do not prevail at the trial court level, these issues will be appealed down the road, for the Ninth Circuit to address precisely the same questions it could resolve now. If Plaintiff is correct, a faster route to final resolution in its favor can only benefit Plaintiff and the Preferred Shareholders. And if Plaintiff is incorrect, as Defendants contend, it would be inefficient for all parties to proceed with costly and time-intensive discovery grounded in a faulty legal premise. The Court can and should certify these questions for resolution now, and stay the litigation pending appeal.

## II.    ARGUMENT

### A.    This Court Should Certify For Immediate Appeal The Question of Whether Maryland Law Governs This Dispute.

As Defendants have explained, the question of whether of Maryland law governs this dispute easily satisfies the statutory criteria under Section 1292(b). Nothing in Plaintiff's opposition casts any doubt on that conclusion or provides any persuasive reason for declining to certify an interlocutory appeal.[1]

#### 1.    This Issue Presents a Controlling Question of Law.

Plaintiff does not dispute that the question of whether Maryland law governs is "controlling." *See* ECF No. 56 ("Opp'n") 7–10. Nor could he: Plaintiff's only claim arises under California law, and must be dismissed if Maryland law applies. California courts regularly dismiss UCL claims under Rule 12(b)(6) when a dispute is governed by another state's law, and Plaintiff offers nothing to the contrary. *See* ECF No. 53 ("Mot.") 5–6 (collecting cases). Instead, Plaintiff contends that this question is unsuitable for

---

[1] Plaintiff's contention that "Defendant PNMAC does not seek certification of this Court's denial of its motion to dismiss" is incorrect. Opp'n 3 n.1. Defendant PNMAC's motion to dismiss fully joined Defendant PennyMac Mortgage Investment Trust's motion to dismiss. ECF No. 35. Accordingly, and as stated in Defendants' motion, PNMAC moves to certify for interlocutory appeal on the same grounds.

interlocutory appeal because, he says, it does not involve a "legal" question, but rather only "a mixed question of law and fact." Opp'n 7. That is incorrect.

The Court's conclusion that California law applies rests on its determination that the application of Maryland law "conflicts with a fundamental policy of California's consumer protection laws" regarding available remedies. Order 12. That question—namely, "whether a conflict exists between the laws of two jurisdictions"—"demands a purely legal analysis and requires no factual record." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2012) (considering whether "the consumer protections laws of New Jersey and California" were in conflict); *see Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1321–23 (2008) (reviewing de novo the trial court's "determination that no fundamental policy of California required that California law be applied"). This is precisely the sort of legal question "that the court of appeals could decide quickly and cleanly without having to study the record." *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1089 (E.D. Cal. 2008) (internal quotation marks omitted). There is no need to delve into the allegations in the Complaint, or make factual determinations after weighing the states' competing interests. *Contra* Opp'n. 8. And this legal question is independently dispositive: if there is no conflict between the two jurisdictions, the inquiry is over, and the choice-of-law provision applies.[2] *See Gustafson v. BAC Home Loans Servicing, LP,* 294 F.R.D. 529, 537 (C.D. Cal. 2013); MTD 9–10 & n.7; MTD Reply 4–5.

For these reasons, district courts routinely certify choice-of-law questions for interlocutory appeal where, as here, the appellate court "would not be called upon" to "resolve factual disputes."[3] *Hengle v. Asner*, 2020 WL 855970, at *8 (E.D. Va. Feb. 20, 2020) (certifying for interlocutory appeal the question whether "enforcement of the

---

[2] To be sure, the Court also assessed California and Maryland's interests in the litigation, but that is a separate prerequisite that must be met in order to find an applicable choice-of-law provision unenforceable. It has no bearing on the legal question of whether a conflict exists on a matter of fundamental policy.

[3] The only "facts" relevant to the policy-conflict inquiry are basic and not in dispute: that PennyMac Mortgage Investment Trust is a Maryland entity, Compl. ¶ 28, and that the Complaint seeks an equitable remedy, *see id.* ¶ 83.

3

Choice-of-Law Provision would violate Virginia's compelling public policy against unregulated usurious lending"); *First State Ins. Co. v. XTRA Intermodal, Inc*., 2024 WL 2813812, at \*2 (S.D. Ill. June 3, 2024) ("The issue of which state's law governs the interpretation of the insurance policies in this case" is a "question of law under [S]ection 1292(b)."); *Reliable Tractor, Inc. v. John Deere Constr. & Forestry Co*., 2009 WL 10713773, at \*2 (M.D. Ga. Oct. 20, 2009) (certifying choice-of-law questions under Section 1292(b) because "their resolutions are not dependent upon a review of a complex evidentiary record"); *Anderson v. Dassault Aviation*, 2005 WL 8164289, at \*3 (E.D. Ark. Mar. 15, 2005) ("application of Michigan law as opposed to New Jersey and/or Arkansas law to this entire action presents a controlling legal question").  And as Defendants explained, the Ninth Circuit has accepted choice-of-law questions for interlocutory appeal.  *See* Mot. 6 (collecting cases); *see also Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 779, 782–83 (9th Cir. 1991); *Phillips v. Amoco Trinidad Oil Co*., 632 F.2d 82, 83–84 (9th Cir. 1980).[4]  The Court should follow the same path here.

## 2.    Substantial Grounds Exist For a Difference of Opinion.

Ignoring the Court's express acknowledgment of the "difficult[y]" of this issue, Order 11, Plaintiff contends that there is not "a substantial ground for difference of opinion," Opp'n 10–14.  To that end, Plaintiff's opposition is largely devoted to arguing that certification is inappropriate because "California's choice of law rule" is "not

---

[4] Plaintiff argues that *Starr Indemnity & Liability Co. v. Rolls-Royce*, 725 F. App'x 592 (9th Cir. 2018), is "inapposite" because "the certification motion was unopposed." Opp'n 9.  But Section 1292(b)'s requirements are "jurisdictional," so an appellate court cannot grant interlocutory appeal merely because no party opposed the request.  *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).  And in any event, the fact that the motion was unopposed only underscores the importance—to the litigants and the Court alike—of definitively resolving threshold legal questions at the outset of a case.  Nor does Plaintiff even attempt to explain why it matters that the district court in *Hoffman v. Citibank (S. Dakota), N.A*., 546 F.3d 1078, 1082 (9th Cir. 2008), "failed to conduct any choice of law analysis," Opp'n 8–9, or address that the district court, in certifying the issue for immediate appeal, wrote a lengthy opinion explaining why the "choice of law issue" was "a controlling question of law." *See Hoffman v. Citibank (S. Dakota), N.A*., 2007 WL 5659406, at \*2–3 (C.D. Cal. Feb. 15, 2007).

4

novel," and, Plaintiff contends, Defendants did not cite any "contrary positions" beyond their own arguments.  Opp'n 10.

But that is not the standard under Section 1292(b):  as the statute states, all that is required is a "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).  The question is not resolved by counting up the number of decisions on either side of the ledger, but by assessing whether there is any substantial support for reaching for the opposite conclusion.  *See Andrade v. P.F. Chang's China Bistro, Inc.*, 2013 WL 12315517, at \*7 (S.D. Cal. Nov. 26, 2013) ("[T]he mere fact that a substantially greater number of judges have resolved the issue one way rather than another does not, of itself, tend to show that there is no substantial ground for difference of opinion.").  Indeed, "the most important factor is the strength of the arguments in opposition to the challenged ruling." *Linkline Commc'ns, Inc. v. SBC California, Inc*., 2005 WL 8252959, at \*10 (C.D. Cal. Apr. 1, 2005) (internal quotation marks omitted).  Here, there are several reasons why the choice-of-law issue satisfies Section 1292(b)'s "substantial ground" standard.

First, as Defendants have explained, Maryland law offers other ways for the Preferred Shareholders to enforce their rights beyond consumer-protection statutes, including potential contractual claims that allow for equitable relief such as specific performance in appropriate circumstances.  *See* Mot. 7–10.[5]  Pursuing such remedies makes sense here, given that claims arising "from the duties listed in the Articles [Supplementary]"—like Plaintiff's claim—"are . . . treated as breach-of-contract claims" under Maryland law. *Kim v. Cedar Realty Tr., Inc*., 116 F.4th 252, 260 (4th Cir. 2024).  Accordingly, a reasonable jurist could easily conclude that the availability of equitable remedies under Maryland law fully satisfies any legitimate California policy

---

[5] Counsel for Defendants also addressed this point during oral argument, explaining that "nothing" "would preclude the plaintiff from suing under Maryland law to enforce their reading . . . of the Articles Supplementary."  ECF No. 49 ("Nov. 21 Tr.") at 6.

5

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

interest in providing Plaintiff with an avenue for potential equitable relief, rendering any putative "conflict" illusory.

Tellingly, Plaintiff offers no substantive response to this argument, and instead asserts that Defendants "waived" it. Opp'n 13. Not so. Defendants have always maintained that there is no conflict on a matter of fundamental California policy. In the motion to dismiss briefing, Defendants addressed Plaintiff's narrow assertion that Maryland's consumer protection statute does not allow a plaintiff to "seek injunctive relief on behalf of the public," Opp. to MTD 21, *see* MTD Reply 4–5; Mot. 7–9, and when the Court indicated that it was inferring a lack of equitable relief more broadly, Defendants addressed that position at oral argument: "[T]here is nothing that would keep them from getting an adequate remedy [under Maryland law], including having the corporation change, and forcing the corporation, if that is what the court rules, to follow the Articles Supplementary[.]" Nov. 21 Tr. at 6. This motion for certification continues on the same line, explaining that, under Maryland law, equitable relief is available for aggrieved shareholders, and thus that Maryland law does not conflict with a fundamental California policy. *See* Mot. 7–9. And a party does not "waive" an argument when they later "elaborat[e] upon and prioritiz[e]" an argument that they have already raised. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1087 n.1 (9th Cir. 2023); *see Puerta v. United States,* 121 F.3d 1338, 1341–42 (9th Cir. 1997) (party does not waive an argument when it "elaborate[s]" upon an earlier one by citing "more extensive authorities").

Second, as to the Court's conclusion regarding relief under the Maryland Consumer Protection Act specifically, reasonable jurists could disagree whether the different approach to remedies constitutes a conflict with fundamental California policy. *See* Mot. 9–10. The Court relied on *Walter v. Hughes Communications, Inc.*, 682 F. Supp.2d 1031, 1042 (N.D. Cal. 2010), and as Defendants explained, at least one other court has called *Walter*'s conclusion into question, declining to adopt "Plaintiffs' argument regarding the differences in remedies between Maryland law and the UCL"

and questioning whether, even if there were a difference, "it would contravene a strong public policy of California." *Irwin Naturals v. Securenet, LLC*, 2010 WL 11598030, at *2 (C.D. Cal. May 25, 2010); *see also Dugan v. Lloyds TSB Bank, PLC,* 2014 WL 1647691, at *5 (N.D. Cal. Apr. 24, 2014) (finding *Walter* "distinguishable" in case between bank and "sophisticated real estate investors" because *Walter* "involved relatively unsophisticated consumers, towards whom the fundamental policy concerns of California may be more solicitous").

The lack of a conflict is particularly true here, given the relief sought. Plaintiff contends that this "case is not primarily about the 'payment of money,'" but seeks an injunction requiring PennyMac to pay dividends—*i.e.*, money—at a different rate. Opp'n 14. Nor can Plaintiff actually identify any difference in how such relief would play out under the UCL as compared to enforcing the contract under corporate law. If a court makes a final determination under Maryland law that the Articles contractually require PennyMac to pay dividends using a SOFR-based rate, PennyMac will, as a practical matter, have to pay dividends to all Preferred Shareholders (current or future) using a SOFR-based rate. That achieves the same "compliance" and "deter[rence]" objectives as a UCL-based injunction. Opp'n 14.

Finally, the Court's own acknowledgment that this issue is "difficult," Order 11—which Plaintiff nowhere mentions—underscores that reasonable jurists could differ on the question, which is the very definition of a "substantial ground for difference of opinion" under § 1292(b).

### 3.    Permitting Immediate Appeal Would Materially Advance The Termination of The Litigation.

Finally, Plaintiff asserts that an interlocutory appeal will not "materially advance the resolution of this litigation" because, he says, this Court "could" grant Plaintiff "leave to amend his Complaint," presumably to assert a claim under Maryland law. Opp'n 15. In that case, the Court "may" have to decide a motion to transfer venue, or new motion to dismiss briefing. *Id.* But there is no dispute that the only claim that has

7

actually been asserted in this litigation—a UCL claim—would need to be dismissed, and could not be repleaded.  The fact that Plaintiff, hypothetically, may bring a new and different claim that he has not yet asserted is no reason to continue litigating this case on an incorrect premise regarding which jurisdiction's laws control.  Indeed, it is precisely why interlocutory appeal is appropriate.  If Plaintiff were to amend his Complaint to add a new cause of action under Maryland laws, this case would—to say the least—"take a decidedly different path." *See Brickman v. Facebook, Inc*., 2017 WL 1508719, at *2 (N.D. Cal. Apr. 27, 2017) (certifying question under Section 1292(b)).

Plaintiff does not dispute that an immediate appeal "could" save the parties and the Court substantial time and resources otherwise spent litigating under a mistaken view of controlling law.  *See In re Cement Antitrust Litig*., 673 F.2d 1020, 1026 (9th Cir. 1981).  If the Court *does not* certify the choice-of-law question, then this case will proceed through discovery and pre-trial briefing, and potentially through class-certification, trial, and post-trial motions—and only then could the Ninth Circuit analyze, for the first time, the *threshold*, case-dispositive legal question of whether California law applies at all.  Further, if the Ninth Circuit ultimately reverses this Court's choice-of-law determination after final judgment, the parties and the Court would inevitably need to address the issues that Plaintiff identifies—like a motion to transfer venue, or a motion to amend the complaint—in any event.  *See Rollins v. Dignity Health*, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 26, 2014).  Thus, "if the Ninth Circuit reverses," an interlocutory appeal would allow the parties to "turn to these issues sooner rather than later," *id*., thereby avoiding the substantial waste of judicial resources that would be expended on potentially unnecessary litigation under California law.

Suffice it to say, therefore, that an immediate appeal would "facilitate disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later." *John v. United States*, 247 F.3d 1032, 1051 (9th Cir.2001) (en banc) (Rymer, J., special statement); *see also Reese v. BP Expl. (Alaska) Inc*., 643 F.3d 681, 688 (9th Cir. 2011); *Ocean S. v. Los Angeles Cnty.,* 2024 WL 5298601, at *7 (C.D. Cal. Dec. 4, 2024)

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

("It is sufficient that reversal on interlocutory appeal may streamline the litigation, including by precluding some claims."); Mot. 5–6, 11.

**B.    This Court Should Certify For Immediate Appeal The Question of Whether PennyMac's Fallback Dividend Rates Are Qualifying "Benchmark Replacements" Under The LIBOR Act.**

There is also no reason to wait to seek appellate review of the central legal issue in dispute in this case: what types of rates qualify as "benchmark replacements" under the LIBOR Act. Plaintiff has no response to the many cases in which courts have certified novel questions of statutory interpretation for immediate appeal. Rather than confront that compelling authority, Plaintiff mischaracterizes the identified controlling question of law as fact-driven, ignores the substantial grounds for difference of opinion about the Court's holding, and downplays the unquestionable benefit of immediate appellate review.

**1.    This Issue Presents a Controlling Question of Law.**

Defendants' request for appeal here presents a pure question of statutory interpretation—namely, whether the term "benchmark replacement" in the LIBOR Act, 12 U.S.C. § 5802(3), must (as Plaintiff says) be a "benchmark," *id*. § 5802(1), and thus cannot in any circumstance comprise a fixed rate, *see* Opp. to MTD 11–14, or whether a "benchmark replacement" may be another "dividend rate," fixed or variable, MTD Reply 6–10 (arguing that a "benchmark replacement" also comprises fixed interest rates or dividend rates).

Plaintiff's attempt to recast this as a mixed question of law and fact inappropriate for interlocutory review is misplaced. *See* Opp'n 15–16. If the statutory interpretation question is decided in Defendants' favor, there can be no question that Defendants comply with the LIBOR Act. There is no dispute about what the fallback provisions in PennyMac's Articles say or that they provide for fixed rates in the event of LIBOR's unavailability. *See* Mot. 13; Order 16 ("Applying the Act to Section 4(g) of the Articles . . . leaves operable only the final clause"); Opp. to MTD 13–14 ("The final clause at the

9

end of the waterfall in Section 4(g) [of the Articles] points to a fixed rate . . . .").  Nor is there any dispute that the LIBOR Act does not "alter or impair" fallback provisions that specify a "benchmark replacement" that is not based on LIBOR, allowing those fallbacks to operate according to their terms. *See* 12 U.S.C. § 5803(a)(2), (f)(2); MTD 11–15.

Plaintiff's contention that applying a statute to undisputed facts is too fact-bound for interlocutory review proves too much.  In *every* statutory interpretation case, a court must determine whether something (*e.g.*, a party's conduct, or a contract) "conforms" with the statute—that is precisely the point of interpreting the statute in the first place. *See Joffe v. Google, Inc.*, 746 F.3d 920, 924–36 (9th Cir. 2013) (accepting interlocutory appeal under Section 1292(b) to determine whether, by collecting data from unencrypted Wi-Fi networks, the defendant did or did not violate a federal statute).  If applying the statute alone created a "mixed issue of law and fact," Opp'n 16, then no statutory interpretation would ever qualify as a pure legal question, rendering meaningless the well-established principle that questions of "statutory interpretation" are ideal candidates for interlocutory appeal.  *See San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.,* 2021 WL 4988033, at *3 (C.D. Cal. June 1, 2021) (certifying question of statutory interpretation for immediate appeal in part because of the statute's "ambiguous" language).

Plaintiff next argues that the question presented is not "controlling" because the Court also held that Plaintiff's Complaint plausibly alleged that Defendants' also violated the UCL's "unfairness" prong.  *See* Opp'n 16–17.  This argument fails.  If the Ninth Circuit reverses this Court's interpretation of the statute and holds that fixed-rate fallbacks constitute valid "benchmark replacements" under the LIBOR Act, then Plaintiff's "unfair" claim would also fail under both federal preemption and the UCL's safe-harbor doctrine.  *See* Mot. 14–15; MTD Reply 14–17.  Federal preemption would apply because, if the Ninth Circuit concludes that PennyMac's current rate complies with the LIBOR Act, then state law cannot impose a contradictory obligation.  *See* MTD

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

18–19.  Similarly, the UCL's safe-harbor prevents courts from declaring "unfair" any business practice that "has been deemed lawful" by another source of law—and a Ninth Circuit holding confirming Defendant's compliance with the LIBOR Act would constitute precisely such permission.  *See Byars v. SCME Mortg. Bankers, Inc*., 109 Cal. App. 4th 1134, 1147 (2003); MTD 17–18.[6]

Plaintiff disputes almost none of this, instead stating in conclusory fashion that he "opposed these arguments already."  Opp'n 17.  But Plaintiff does not and has never contested that the LIBOR Act preempts any state law that would impose a different benchmark replacement rate than the LIBOR Act.  *See* Opp. to MTD 17–18.  Nor has Plaintiff ever meaningfully argued that the UCL's safe-harbor would not apply if Defendants complied with the LIBOR Act.  *See id*. 17 ("As the UCL claim here is not one based on a lawful act, the statute's safe harbor does [not] bar Plaintiff's claims.").  Accordingly, if the Ninth Circuit holds that PennyMac arrived at and is applying its rate in accordance with the LIBOR Act, Plaintiff cannot and does not state a claim that the "unfair" prong requires a different rate.  *See* MTD 18–19 & n.11; MTD Reply 14–17.  That means the question presented for certification is "controlling."[7]

### 2.    Substantial Grounds Exist For a Difference of Opinion.

The parties and the Court all agree that construing the LIBOR Act's definition of "benchmark replacement"—and in turn whether, under the statute, fixed dividend rates

---

[6] For that reason, Plaintiff is incorrect in asserting that "Defendants do not seek to certify questions regarding federal preemption or whether the UCL safe harbor would apply in this litigation."  Opp'n 17.  The application of federal preemption and the UCL safe harbor are subsumed within the statutory interpretation question on which Defendants are seeking appeal.  If the Ninth Circuit agrees with Defendants' interpretation of the statute, then Plaintiff's unfair claims necessarily fail.  *See* MTD Reply 14–17.

[7] Even without preemption or the safe harbor—both of which are dispositive purely legal issues—a determination that PennyMac's undisputed fallback rates are qualifying "benchmark replacements" would call the Court's conclusion on the "unfair" prong into serious question.  The Court's Order permits Plaintiff's unfair theory to go forward only on the ground that PennyMac's conduct is "tethered to a policy goal for which Congress enacted the LIBOR Act"—specifically, preventing "floating-rate instruments from unfairly converting to fixed-rate instruments."  Order 18.  But this conclusion assumes the premise that the LIBOR Act requires use of a floating rate.  *See* MTD Reply 16.  Plaintiff has never been able to explain how *complying* with a federal statute could be unfair under the UCL.  *See* MTD 18–21; MTD Reply 16–17.

11

may qualify as "benchmark replacements"—is an issue of first impression. Nevertheless, Plaintiff argues that "Defendants cannot rely on the fact that a case presents a matter of first impression to establish that a substantial difference of opinion exists." Opp'n 18.

To be sure, the Ninth Circuit has recognized that "the mere presence of a disputed issue that is a question of first impression, *standing alone*, is insufficient to demonstrate a substantial ground for difference of opinion." *Couch v. Telescope Inc*., 611 F.3d 629 (9th Cir. 2010) (emphasis added).[8]  But the court has also expressly rejected as "formalistic" the requirement that "adverse authority develop around an issue before we review it on interlocutory appeal." *Reese*, 643 F.3d at 688 n.5.  Rather, the court has explained, "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Id*. at 688; *see ICTSI Oregon, Inc.*, 22 F.4th at 1130.  Thus, contrary to Plaintiff's assertions, Defendants are not "attempt[ing] to convince the court that the complete lack of case law"—standing alone—"clearly establishes a substantial ground." Opp'n 18.  Instead, Defendants' argument is that this Court should certify the question presented because it is *both* (1) "novel" and (2) a question about which "fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688.

For that reason, as Defendants have explained at length, the strength of their arguments on the merits supports the conclusion that fair-minded jurists might find that the plain language of the LIBOR Act points squarely in PennyMac's favor, and therefore that PennyMac's initial fixed dividend rates qualify as "benchmark replacements" under the LIBOR Act. *See* Mot. 15–17.  Plaintiff's only response is that this Court has already

---

[8] Defendants repeatedly cite the Ninth Circuit's decision in *Couch*, 611 F.3d at 629.  There, however, the court determined that there was no substantial ground for difference of opinion because the district court had resolved the underlying motion by relying on four "leading California" appellate cases addressing the issue, with "no California law to the contrary." *Id*. at 632.  That is a sharp difference from this case, where there is no "relevant authority analyzing the construction" of the statute.  Order 16.

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

rejected Defendants' statutory arguments and that "Defendants' strong disagreement
with the Court's determination does not warrant interlocutory review."  Opp'n 19–20.
But in every case seeking certification under § 1292(b), the court will have already ruled
against the movant on the underlying question of law.  And the "most important factor"
in considering whether substantial grounds exist for a difference of opinion is "the
strength of the arguments in opposition to the challenged ruling."  *Linkline Commc'ns*,
2005 WL 8252959 at *10 (internal quotation marks omitted).  Thus, it makes sense that
Defendants have made a robust argument explaining why this Court's interpretation of
the statute should be reversed on appeal, pointing to the authority (including Supreme
Court authority) that supports their position.  *See* Mot. 15–17.  Even if the Court
ultimately disagrees with Defendants on the merits, there is ample ground to conclude
that interpretation of the LIBOR Act is a novel issue about which fair-minded jurists
might reach contradictory conclusions.  *See Reese*, 643 F.3d at 688.

### 3.    Permitting Immediate Appeal Would Materially Advance The Termination of The Litigation.

Finally, Plaintiff argues that "certification will not materially advance the
resolution of this litigation" because "the Court upheld Plaintiff's UCL unfairness
claim."  Opp'n 21.  This argument merely restates Plaintiff's contention that question
presented is not "controlling," *see id.* 16–17, and therefore fails for the same reason: if
the Ninth Circuit holds that PennyMac arrived at and is applying its rate in accordance
with the LIBOR Act, Plaintiff's "unfair" claim will be barred by federal preemption and
the UCL's safe harbor, *see supra* pp. 10–11; Mot. 14–15.  Thus, an immediate appeal
on the statutory question presented "may materially advance the ultimate termination of
the litigation" by "ending" it.  *Regal Stone Ltd. v. Longs Drug Stores California, L.L.*C.,
881 F. Supp. 2d 1123, 1131 (N.D. Cal. 2012); *see* Mot. 14–15, 17–18.

Further, even if Plaintiff's "unfair" theory somehow survived (which it should
not), resolving the statutory interpretation question would "materially advance"
resolution of this case, even if it did not "have a final, dispositive effect on the litigation."

*Reese*, 643 F.3d at 688.  A ruling in Defendants' favor on appeal would at a minimum preclude Plaintiff's "unlawful" UCL claim, and go a long way to resolving the action entirely.  *See Ocean S*., 2024 WL 5298601, at *7.  Even putting preemption and the safe harbor aside, whether or not PennyMac's actions comply with the LIBOR Act is critical to determining whether those actions are unfair to Preferred Shareholders.  Concluding that a contractual violation is unfair is fundamentally different than concluding that *complying* with contractual terms is unfair, and it would be inefficient and wasteful to litigate this case on an incorrect premise.

> **C.    This Court Should Stay Further Litigation Pending Resolution of The Appeal.**

Plaintiff's contention that the Court should not grant a stay even if it certifies this case for an interlocutory appeal also has no merit. Opp'n 20–21. As Defendants have explained, Mot. 19–20, it would defeat much of the purpose of an interlocutory appeal for the Court to proceed with the litigation while the appeal was pending.  *See Mehedi v. View, Inc.,* 2024 WL 3748012, at *2 (N.D. Cal. Aug. 8, 2024) (recognizing that "if the parties were required to continue litigating this case, much of the efficiency and benefit of an interlocutory appeal would be lost" and granting stay).

Moreover, Plaintiff's contention that he and the putative class would be harmed by "any delay in this case" is both irrelevant and wrong.  Opp'n 22.  When determining whether to stay an action under Section 1292(b), a court considers "whether (1) resolution by the Ninth Circuit of the issue addressed in [the appealed order] could materially affect this case and advance the ultimate termination of litigation and (2) whether a stay will promote [ ] economy of time and effort for the Court and the parties." *In re SFPP Right-of-Way Claims*, 2016 WL 11744979, at *2 (C.D. Cal. Dec. 5, 2016) (internal quotation marks omitted); *see* Opp'n 21 (citing same standard).  The test does not require the Court to determine whether the non-moving party will be "harmed" by a stay pending interlocutory appeal.  That makes sense: the Court has yet to determine

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

definitively whether Plaintiff and the putative class are entitled to relief, and so nothing in the Court's Order has altered the status quo.

In any event, regardless of how Plaintiff frames the relief he seeks, he and the putative class are ultimately seeking an order forcing Defendants to implement SOFR as the benchmark replacement rate—which translates directly to the payment of money. And it is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

## III.    **CONCLUSION**

For the foregoing reasons, Defendants request that this Court certify its Order of February 26, 2025, for interlocutory review pursuant to 28 U.S.C. § 1292(b), amend its Order to state that the necessary conditions for interlocutory review have been met, and issue a stay of further proceedings.

Dated: April 14, 2025                    Respectfully submitted,

*/s/ Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Jonas P. Mann

*Attorneys for Defendants PennyMac*
*Mortgage Investment Trust and PNMAC*
*Capital Management LLC*

WILLIAMS & CONNOLLY LLP
Steven M. Farina (*pro hac vice*)
Melissa B. Collins (*pro hac vice*)

*Attorneys for Defendant PennyMac*
*Mortgage Investment Trust*

*DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER*
*FOR INTERLOCUTORY APPEAL AND FOR A STAY OF PROCEEDINGS*

1

## CERTIFICATE OF COMPLIANCE

2

The undersigned, counsel of record for PennyMac Mortgage Investment Trust,

3

certifies the brief contains 5,279 words, which complies with the word limit of L.R.

4

11-6.1.

5

6

Dated: April 14, 2025                    Respectfully submitted,

7

                                         */s/ Matthew Donald Umhofer*
8                                        UMHOFER, MITCHELL & KING, LLP
                                         Matthew Donald Umhofer
9                                        Jonas P. Mann

10                                       *Attorneys for Defendants PennyMac*
                                         *Mortgage Investment Trust and PNMAC*
11                                       *Capital Management LLC*

12                                       WILLIAMS & CONNOLLY LLP
                                         Steven M. Farina (*pro hac vice*)
13                                       Melissa B. Collins (*pro hac vice*)

14                                       *Attorneys for Defendant PennyMac*
                                         *Mortgage Investment Trust*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1